**FILED**

APR 2 4 2008

Clerk, U.S. District and
Bankruptcy Courts

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ROSSI M. POTTS**
**14124 Bishop Claggett Court**
**Upper Marlboro, MD. 20772**
(301) 574-2541
    **Plaintiff,**

    **v.**

Case: 1:08-cv-00706
Assigned To : Urbina, Ricardo M.
Assign. Date : 4/24/2008
Description: Civil Rights-Non-Employ.

JURY ACTION

**HOWARD UNIVERSITY HOSPITAL &**
**HOWARD UNIVERSITY**
**2041 Georgia Avenue, N.W.**
**Washington, DC 20060**

    **Defendant,**

---

## COMPLAINT FOR DISCRIMINATION AND RETALIATION

### PARTIES

1. The Plaintiff is a Pro Se litigant residing at 14124 Bishop Claggett Court Upper Marlboro, Maryland 20772. Rossi M. Potts was a former employee at Howard University Hospital in the establishment of the Cardiovascular Disease Division.

2. The Defendant Howard University/Howard University Hospital is the opposing party residing at 2041 Georgia Avenue, NW. Washington, D.C. 20060.

1

## JURISDITION

This District Court has jurisdiction pursuant, United States Constitutional Article III, Section 1, Section 2, Clauses [1], and [3]; United States Constitutional Article VI, Clause [2]; Title 2 District of Columbia Human Rights Act of 1977; Title 4 DCMR'S; U.S.C.A Title 18 § 241; Public Law 103-353 Title 38 U.S.C. Chapter 43 Employment and Reemployment Rights of Members of the Uniform Services subchapters I, II, and III (a-j); Title 18 U.S.C.A. § 241, § 372, § 1001(a)(1-3), (c)(1-2); Public Law 104-292, H.R. 3166, False Statements Accountability Act of 1996 § 2; Equal Pay Act of 1963, Fair Labor Standards Act of 1938 Title 29 US.C.A. §§ 201-219 et seq.; National Labor Relations Act Title 29 U.S.C. §§ 151-168 et seq.; Labor-Management reporting and Disclosure Procedure Act of 1959 Title 29 U.S.C. §§ 401-531 et seq.

## COMPLAINT

### Opening Statement

After extensive reading and gathering material evidence and fabricate evidence, from

Federal and Local Government's investigation proceedings during participation; I' am

now prepared to direct the Court's attention to newly found unlawful discoveries of direct

evidence which has been discovered to be in connection with the factual and legal issues

of discrimination thus, nature is related to serial violations of discrimination. Therefore,

new claims will be asserted for the purpose of formal proceedings herein this United

States District Court for the District of Columbia pursuant, <u>Grant v. Hazelett Stripe-</u>

<u>Casting Crop. (2d Cir. 1987)</u>, pursuant, United States Constitutional Amendment VI,

plaintiff has a responsibility to provided the accused with fair notice therefore, inferences

will provide fair notice to the defendant in regards to the nature and cause of the

accusation herein this Complaint. Therefore, plaintiff would like to preserve his rights to

trial by jury in this subject matter pursuant, United States Constitutional Amendment VII,

or by Order of the Court if it is just pursuant Federal Rule of Civil Procedure 39(b).

"Therefore, the language mentioned herein this Complaint is not limited to discrimination

but strike at the entire spectrum of disparate treatment." Meritor Savings

Bank v. Vinson (S. Ct. 1986).

Discriminatory statements regarding military obligations and/or services with the uniform services had been made in connection to proceedings conducted by the Administrative Federal and State, investigating agencies therein the District of Columbia Office of Human Rights, Local Government thus, cross-filed with the United State Equal Employment Opportunity Commission:

1.) U.S. EEOC No. 10CA0048; DCOHR No. 00-043-P (CN)
Charge was officially filed on November 10, 1999, proceeded by a pre-complaint on September 25, 1999, which was timely filed therein the District of Columbia Office of Human Rights, Local Government, thus, cross-filed with the United States Equal Employment Opportunity Commission, thus, followed by a Notice of Suit Rights, thus indicating that "The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." There is no mention or suggestion of untimely filing, because this complaint was timely filed. *See*, Notice of Suit Rights and Letters of Determination/Determination on Complaint Request for Reconsideration.

2.) U.S. EEOC No. 10CA200161; DCOHR No. 02-240-P (CN),
Charge was officially filed on July 1, 2002, proceed by a pre-complaint, which was timely filed therein the District of Columbia Office of Human Rights, Local Government, thus, cross-filed with the United States Equal Employment Opportunity Commission, thus, followed by a Notice of Suit Rights, thus indicating that "The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." There is no mention or suggestion of untimely filing, because this complaint was timely filed. *See*, Notice of Suit Rights and Letters of Determination/Determination on Complaint Request for Reconsideration.

3.) Therefore, any reasonable person can conclude that Rossi M. Potts has participated in administrative federal and state proceedings and/or has testified under Title 2, Chapter 14-Human Rights District of Columbia Code, therefore, it is within reason to conclude that federal and state remedies had been exhausted.

4.) The United States Department of Labor is the enforcing Department regarding this subject matter; however, Rossi M. Potts was lulled by the Defendant's willful misconduct into failing to make a timely charge with that department. Therefore, Plaintiff proceeds on this subject matter pursuant, U.S.C. Title 38 Chapter 43 subchapter III § 4323(a)(2(A), pursuant, § 4322(a)(2)(A).

4

**Count 1, Discrimination and Retaliation under the Equal Pay Act of 1963/Fair Labor Standards Act of 1938 U.S.C. Title 29 § 206(d).**

However, Rossi M. Potts was a service member of the uniformed service and he was "Honorably Discharge" on September 12, 2001, Reserve Order CA-013163 pursuant, subchapter I § 4304. He had an obligation to perform services with the United States Air Force Reserves an obligation Ordered and Administered by the United States Air Force Reserves as it pertains to his employment tenure with Howard University Hospital. Therefore, Rossi M. Potts asserts his claim of discrimination pursuant, Chapter 43 subchapter II § 4311(a), (b)(2/4), (c)(1), (c)(2)(A/D), and (d), respectfully under this entitlement, Title 38 Chapter 43 subchapter III § 4323(a-j) because, there is a **Action For Relief** herein this claim pursuant, Chapter 43 subchapter III § 4323(a)(2)(A) Pursuant, § 4322(a)(1)(2)(A) thus, **Jurisdiction** now lies herein this District Court § 4323(b)(1/3), **Venue** § 4323(c)(2), **Remedies** § 4323(d)(1) the Courts discretion not excluding indexing because it is indefeasible and relevant to the continuous injuries, **Equity Powers** § 4323(e), **Standing** § 4323(f), **Respondent/Defendant** § 4323(g), **Fees, Court Costs** § 4323(h)(1/2) if required, **Inapplicability of State Statutes of limitations** § 4323(i). Therefore, this subject matter shall apply because when he participated with the United States Air Force Reserves adverse actions occurred on at least two notable occasion stemming from the employer Howard University Hospital concerted action to **adopted a subjective selective system** that was intended to limit and deprive the person Rossi M. Potts who served in the uniform services from equal employment opportunities, by

5

denying him from promotion or promotional opportunities which adversely affects his

employment status, (benefits/employer educational benefits for family members; fringed

benefits/VALIC, employee pension plan, pursuant, Chapter 43 subchapter II § 4318,

which is considered an economic loss) thus, disadvantaging his economic potential &

future employment status and it was an intentional willful malicious act that deprived him

from promotion and/or equal promotional opportunities, when there was **objective**

**criteria available** and commonly accepted contours of a seniority system, in which they

should not have fundamentally departed from.  Furthermore, Howard University

Hospital's concerted action had adversely affect his employment status thus, causing or

contributing to a hostile environment that continuously harassed him by means of petty

indignities thus, causing continuous injuries that ultimately lead to his termination.

Howard University Hospital hindered his employment advancement and education

advancement because of his military obligation to perform service in the uniformed

service with the United States Air Force Reserves, which was a torn in the foot for a lack

of better words to the employer.  Therefore, he was asked by Dr. Bernice D. Brown his

immediate supervisor and evaluation rater reviewer to chose between the uniformed

service and/or Howard University Hospital to serve or else seniority recognition will not

be granted, awarded, or recognized; her statement was to that effect and the above

statement was not her exact words.  Simply put Rossi M. Potts was intentionally denied

from a "Promotion" because of his obligation to perform services with the uniformed

services and because the employer intentionally failed to recognize him as the senior

**6**

"Ecohcardiography Technologist because he participated with the United States Air

Force Reserves, which was an obligation Ordered and Administered by the United States

on the following dates:

1.) September 14, 1998 to December 21, 1998 was the 1st **obligation** to
perform service an obligation Ordered and Administered by the United States Air Force
Reserves pursuant, Title 38 Chapter 43 subchapter II § 4311(a).

2.) August 16, 1999 to August 27, 1999 was the 2nd **obligation** to perform
service an obligation Ordered and Administered by the United States Air Force Reserves
pursuant, Title 38 Chapter 43 subchapter II § 4311(a). Two weeks not (3) Months as was
intentionally and falsely stated on the "Justification Sheet" dated on August 26, 1999.

 3.) On February 9, 1999, I filed an Official Grievance in connection to the 1st **military
obligation** to perform services with uniformed service Air Force Reserves, because it
was not made clear as to what Ms. Colleen Williams employment status is or was, during
federal & state proceedings, which is and has been in question for over 10 years Howard
University Hospital had continuously refused to provide Ms. Colleen Williams temporary
employment status, meaning temporary **waged employee** or temporary to do a **specific
job,** when she was hired on December 1, 1998, therefore, any reasonable person can
conclude that concealment and refusal exists. Furthermore, as of this present day of
filing this Complaint Subterfuge is in question and the injuries have been continuous
thus, leading to termination, which was in part an act of reprisal because of participating
with the DCOHR/U.S. EEOC, proceedings. Willful misconduct lulled Rossi M. Potts
into failing to make timely charges secondary to tricks, schemes, materially false,
fictitious statement, among other reasons pursuant, NLRA U.S.C. Title 29 §§ 157,
158(a)(1-3).

4.) Ms. Williams, Colleen initial employment date was in May 1998. According to a
Howard University Hospital Requisition Recommendation Form her beginning date of
appointment was July 1, 1998 and her termination date of appointment was December 31,
1998. According to that same Requisition Recommendation Form Justification was "To
provide continuity of services while the senior tech is out on extended sick leave."
**Which means that her temporary appointment was a waged employee.** Waged
employee's become regular full-time employees immediately after a (12) tenure,
according to the October 18, 1999 Collective Bargaining Agreement Article I(c). This
little known fact was mention to Rossi M. Potts by shop steward Ms. Mckissick, Deborah
when he attempted to file grievance initially for equal pay for equal work in 1998 before
his 1st **military obligation**. A second attempt to grieve was also denied immediately after
the 2nd **military obligation** and the death of Ms. Spencer, Jane on January 7, 1999.

7

## ARGUMENT

Rossi M. Potts had a military obligation to perform service with the United States
Air Force Reserve on September 14, 1998. Therefore, on September 10, 1998,
Howard University/Howard University Hospital was given fair warning outlining
compliance with Federal Statute U.S.C. Title 38 by a Memorandum addressed to the
Supervisor of Rossi M. Potts; faxed to Howard University Hospital, Attention:
Bernice Jackson, M.D., [now known as Bernice Brown, M.D.]; On the United States
of America Department of Defense letterhead from the United States Air Force Air
Force Reserve Command, subject matter: Air Force Reserve Participation/Active
Duty Training. The, subject, setout four numerated sentences indicating the active
status of military training for Rossi M. Potts, 1st the dates of training such as 14
Sept. to 24 Nov. 1998, 2nd the law such as Chapter 43 of part III, Title 38, U.S. Code
that Howard University/Howard University Hospital must comply with, 3rd a
telephone number such as (301) 981-7122 for any question that may arise and/or for
any clarification of the Memorandum, and finally the 4th a thank you statement for
continued support, and a sincere regret of any inconvenience that this United States
administered obligation of Active Duty Training may cause Howard
University/Howard University Hospital, for Rossi M. Potts absence to train with the
United States Department of Defense/United States Department of the Air Force Air
Force Reserve Command. Furthermore, Rossi M. Potts active duty training was

**8**

extended to December 21, 1998 and Howard University Hospital was formally informed

of the extended training and had complied with the extension as far as Rossi M. Potts was

aware of at that time although he was informed of Ms. Williams, Colleen temporary

employment status change during the September 14, 1998 military service employment.

Upon returning to Howard University Hospital on December 22, 1998, the service

member Rossi M. Potts was informed of the death of, Ms. Spencer, Jane, the senior

Echocardiography Technologist upon his arrival to work on that morning. Therefore,

shortly thereafter, the season holiday's Rossi M. Potts attempted to participate in a

protected activity by means of grievance on January 7, 1999, with shop steward Ms.

Mckissick, Deborah and the attempt to secure employment interest had failed. Therefore,

another attempt to secure my employment interest for employment advancement of

promotion or equal promotional opportunities was taught to have been secured or

successfully obtained by make of grievance filed on February 9, 1999, before, department

of medicine's administrative management Mr. Rowe, Richard thus, witnessed by Mr.

Foster, Robert and shop steward Ms. Armstrong, Alice; verbal conversations or

statements referenced issues of unlawful sex motivated pay distinctions such as equal pay

for equal work issues and Mr. Rowe, Richard asked me for credentials which was

delivered to him; sex motivated discrimination, which he denied and said that her pay

was based on the money basket of the market; and I reminded them of military

obligations rights to participate with military reciting the memorandum referenced

**9**

"Federal Statute" to remind them to comply or else discrimination charges would be taken to protect my future employment opportunity interest from unlawful employment practices under federal statutes Title 38, Title VII and Equal Pay Act of 1963. Simply put the grievance was dubbing Title 38 Chapter 43 promotion rights in connection to the contract Collective Bargaining Agreement Articles, filed therein the grievance, which dubbed the United States Laws. This grievance was made to secure future advancement and/or employment opportunities which was clearly understood by all parties; implicit communication referenced statements reciting the U.S. Laws during that grievance session; among other legal actions and discussions with legal advisors in opposition to Howard University Hospital unlawful employment practices. On many occasion to include hallway discussions with management, union president, union vice president, union shop stewards, and doctors gave Howard University Hospital ample time to make corrections after given fair warnings; simply put explicit and implicit communication with Howard University/Howard University Hospital, reciting U.S. Laws enforced by the U.S. EEOC and U.S. DOL, was conveyed to management and significant others and it was made clear to be made whole if failure to comply with either U.S. Laws or Contract. The representative of his choice was shop steward Ms. Armstrong, Alice and Rossi M. Potts relied on that protected activity in opposition to employers unlawful employment practices. Therefore, seniority, promotion, equal pay opportunities shall not be denied do to the service member obligation to serve in the uniformed service nor shall public law 103-353, or contract of trust be under-minded.

**10**

**Adverse Action**:

On February 9, 1999, a grievance was filed in **good-faith** in response to opposing

unlawful discrimination serial violations or of that nature and to secure future

employment advancement promotion, and to eliminate sex based unequal pay distinctions

imposed on men and women, all of which was discussed during the grievance meeting

with the Department of Medicine Administrative Management, as it pertains to the U.S.

Laws and contract to seal the conveyance of explicit and implicit communication of what

I was experiencing from the Division of Cardiovascular Disease, Echocardiography

Laboratory.  By contrast the language therein the grievance was dubbing U.S. Law in fact

it is connected and supported by this complaint and vice versa.  Therefore, seniority

employment rights, promotion, hiring, compensation, terms, condition, and standards of

employment are some elements to the factual and legal issues herein this complaint.

Fundamentally commonly accepted notions shall not be departed from an objective

seniority system with available criteria.  During the federal and state proceedings when

interrogatories were on the way for analysis Howard University, Senior Associate

General Counsel, Leroy T. Jenkins, Jr., Esq. devised tricks and schemes to conceal

relevant material facts, in **bad-faith**.  Furthermore, he willfully made materially false,

fictitious, and fraudulent statements or representations of material writings knowing the

same to contain materially false, fictitious statements or entries.  Therefore, for those

reasons I assert claims under, U.S.C.A. Title 18 § 1001(a)(1-3), (c)(1-2)/False Statements

**11**

Accountability Act of 1996 § 2, pursuant, District of Columbia Human Rights Act of

1977, Chapter 14 Code § 2-1402.01, which states that **every individual shall have an**

**equal opportunity to participate fully in the economic, cultural and intellectual life**

**of the District and to have an equal opportunity to participate in all aspect of life**,

including but not limited to, in employment or educational institutions... that passage

should not excluding veterans participation therein the District, therefore, the **bold**

**passage** shall apply to the headed complaint entitlements above pursuant, Chapter 14

Code § 2-1402.68, as it pertains to a private cause of action pursuant, Chapter 14 § 2-

1403.16(a-b), thus providing this District Court with jurisdiction and full equity power, as

it pertains to the subject matters herein this complaint, to grant any relief it deems just

and/or appropriate in the form of injunctive relief pursuant, Chapter 14 § 2-1403.07, § 2-

1403.13(a)(1-2). There is reasonable cause in **good-faith** to belief that Howard

University Hospital/Howard University, Senior Associate General Counsel, Leroy T.

Jenkins Jr., Esq., had willfully resisted the DCOHR/U.S. EEOC, investigating officers

requested interrogatories pursuant, Chapter 14 Code § 2-1402.64, § 2-1402.65, for the

purpose of unlawfully aiding, abetting, and inviting, Howard University Hospital

unlawful employment practices pursuant Chapter 14 Code § 2-1402, which is prohibited

by U.S.C. Title 18 § 1001(a)(1-3), (c)(1-2), False Statement Accountability Act of 1996 §

2 pursuant, Chapter 14 Code § 2-1402.61. Also, questionable documents appear to have

been falsified and/or tampered with; as well as notable falsified testimony on

**12**

interrogatories, these unlawful methods were willfully applied to prevent, impede, and

interfere with the formation and administrative duties of investigating officers integrity

to diligently perform there duties under Chapter 14 thus, rendering incompetent

investigating services secondary to Howard University, Senior Associate General

Counsel, Leroy T. Jenkins Jr., Esq., malicious act as follows: 1st he, willfully refused or

failed to provide Ms. Colleen Williams initial application to match the dates of applicants

initial Requisition Recommendation Form, this method was willfully used to conceal her

actual initial hiring date among other objective required criteria and he did not state that

they didn't have the information he simply ignored the interrogatory and refused to

furbish the requested  information as to impede and prevent investigative discoveries; 2nd

he, willfully refused or failed to provide December 1, 1998, Requisition

Recommendation Form to prove that Ms. Colleen Williams was in fact hired on a

temporary basis for a year appointment starting from December 1, 1998 to December 1,

1999, this method was willfully used to conceal her true temporary employment status,

the information would have provided, whether or not if she was on a **wage employee**

**appointment** or hired to do a **specific job appointment**, which was detrimental to my

claim thus, causing continuous injuries, furthermore, it is a critical or crucial part to

determine the involvement of significant others ; 3rd he, willfully refused or failed to state

or indicate whether Ms. Colleen Williams temporary employment status was extended

and/or provided to the local union 2094, wherefore, it is required by the Collective

**13**

Bargaining Agreement (CBA), for the employer to give union notice of employment

extensions, See Article I/Article I(c), this would had meant that they were actually in

compliance with the (CBA); 4th he willfully refused or failed to furnish all grievances as

was requested by investigating officers during  interrogatory intake, therefore, I had to

provide and prove that other grievances existed such as the February 9, 1999 grievance;

on entry of the grievance he resorted to making false and fictitious statement surrounding

the circumstances or purpose of the grievance and claimed that a monetary settlement

was rewarded for the grievance to conceal the material fact that Howard University

Hospital was in fact noncompliant to the (CBA), Articles stated therein the grievance or

close to being noncompliant, which continues to be misunderstood secondary to there

tricks, this subject matter remains to be open for contesting, because of tricks and

schemes to avoid liability and conviction; 5th the willful misconduct of refusing to furnish

pertinent material facts as it pertains to Ms. Colleen Williams, temporary **waged**

**employee** status or temporary **specific job** employment status was crucial and/or critical

information to the investigating officers final analysis.  Therefore, any reasonable person

can conclude that concerted actions were malicious acts willfully used and managed to

conceal the **intricate material facts** from both the union and the investigating officers

thus, willfully to interfere with the formation of inquiry, interrogatories and investigation

and for those reason I believe that **Howard University's** concerted actions were means

of extrinsic/intrinsic fraud thus, willfully applied to deprive me of: (1st full participation

**14**

with both federal and state agencies) and (2nd full participation with local union 2094

representative of my choice thus, to deprive me of the full freedom of association and/or

actual liberty of contract). Furthermore, it was willful misconduct to conceal material

facts that was requested by investigating officers during the intake of interrogatories,

which can now be tested by the hard-look doctrine and the fraudulent concealment rule.

Failure to comply with contracts of trust, inquiries, and grievances impedes the unions

ability to represent members, furthermore, interfering with the formation and

administration of union representative fiduciary duties is a crime or unlawful thus,

making **Howard University**, in part liable for the headed United States Laws, *See,*

(CBA), Article I/Article I(c). Therefore, for those reasons Rossi M. Potts asserts his right

to sue under the headed entitlements above. The full freedom of association or actual

liberty of contract with the local union 2094 union representative of his choice was a

lawful right guaranteed wherefore, when attempts to interfere or restrain the exercise of

the rights guaranteed in section 157 are shown to have caused unlawful employment

practices pursuant, Title 29 § 157(§7), § 158(§ 8)(a)(1, 2, 3, and 5), and § 159(§ 9)(a).

By doing so future events of continuous injuries has resulted to discourage membership

in the labor organization because of the lack of representation and suspicious taught of

concerted actions. Therefore, any reasonable person can conclude that administrative

collective bargaining power attempts was exhausted secondary to the willful misconduct

of the employer to refuse to bargaining collectively. This **Claim** need to be managed in

**15**

phases or by separate trial and separate judgments as was proposed prior to Status

Hearing on March 11, 2008 at 3:30 before Judge Ricardo M. Urbina. The advancement

of this Case was from the approval of the United State Court of Appeals for the District

of Columbia Circuit by mandate remanded for reconsideration of the factual and legal

issues of discrimination, retaliation/retaliatory discharge, and wrongful termination. The

circumstances surrounding this complaint has lead to unfair and unlawful disadvantages

therefore, foreseeable prejudice in this subject matter may render irreversible and/or

irreparable injury with out the District Court full equity powers pursuant, Title 38

Chapter 43 subchapter III § 4323(e).  The grievance filed on February 9, 1999, Fine v.

Ryan Intern. Airlines (7th Cir. 2002), was in opposition to past hiring methods that did not

afford an equal opportunity to establish equal pay for equal work that was possibly an

unlawful employment practice earlier than the December 1, 1998 date of hire for Ms.

Colleen, Williams. The grievance was also made in regards to preventing future

unlawful hiring methods which is now an issue of serial violations and continuous injury,

because it was willful misconduct regardless of other legal action, taken against Howard

University Hospital, because they had first hand knowledge of sex pay distinction and/or

pay discrepancies, because out cries of sex based pay distinctions was announced

throughout the Division of Cardiovascular Diseases and Department of Medicine on

several occasions, which lead to legal action outside of Howard University Hospital

premises.  Simply, put Howard University/Howard University Hospital's concerted

**16**

actions were reckless malicious acts and they resorted to perjured fabricated evidence in

concert to minimize liability. Remedy Consent Decree and preliminary injunction to

protect and secure Rossi M. Potts, defense and lawful right of action in this subject matter

of serial violation. The grievance filed on February 9, 1999 was claimed to have been in

arbitration process outside of the premises of Howard University Hospital however, it

resulted to nothing and I deserve an explanation for such advice; actions will be taken to

substantiate a claim under NLRA U.S.C. Title 29 § 157, 158, and 159.

Howard University Hospital nor the local union 2094 provided union grievances

guidelines and Rossi M. Potts had no way of identifying what the next coarse of action

should have been. On two occasions Rossi M. Potts, was told by local union 2094

representatives, that his February 9, 1999 grievance was in arbitration by shop steward

Alice Armstrong in the month of May 1999 and by Vice President Lorreta Stevenson in

the month of August 1999 just before military obligation to secure his employment

protected activities and employment interest for promotion do to the unequal sex pay

differences impose on men and women; regarding unequal pay for equal work.

Therefore, he is left with suspicious taught due to the employer's malicious act, concerted

actions, and refusal to reveal Ms. Colleen Williams true employment status. She was in a

window to be hired as a permanent employee when Ms. Spencer died on December 22,

1998. She was in a second window to be hire as a permanent employee in May 1999,

after her (12) month tenure, See (CBA) Article I/Article I(c). However, Howard

**17**

University Hospital intentionally interfered with both windows of opportunity for her

permanent employment and they willfully and/or voluntarily decided to **disadvantage**

**Rossi M. Potts** legal rights and employment opportunity rights, and/or protective

activities to **advantage Colleen Williams** employment status, which is a fact by reciting

the justification sheet; **quoting from fabricated evidence the justification sheet, dated**

**on August 26, 1999**, they stated that, "Ms. Williams is a graduate of an approve school

for Cardiac Sonography." and "Currently, the Echocardiography Lab has one technician

who is currently on Military Leave for a total of three (3) months and the senior

technologist, Ms. Spencer, is now deceased." furthermore, "Ms. Williams has been on

temporary appointment since December 1, 1998." and finally "The recruitment of

qualified applicants has been hard because of the very tight market and the limited

number of ECHO Technologists." The fabricated evidence, [meaning false or deceitful

evidence that is unlawfully created with false, fictitious, tricks, scheme, fraudulent

statements or entry knowing it to be false willfully made up **after the relevant event**, in

an attempt to avoid liability or conviction; "the relevant event was the protective activity

and Ms. Colleen Williams window of opportunity for permanent employment in

December 1998 and May 1999"] is the "**Justification Sheet/fabricated evidence**" by

contrast the language in the justification sheet is evincing an evaluative prejudice that

reference markers such as **education/graduate of an approved school of Cardiac**

**Sonography and qualified applicants**, to justify permanent hiring; furthermore, by

**18**

contrast the language is evincing referenced markers such as **gender (his)**, **military**,

**senior**, which should all be considered when determining the full spectrum of disparate

treatment. Therefore, I would like to **drawl on the markers** to substantiate a claim for

discrimination, because the markers are used for justification purposes and therefore, they

cannot be exclude as motivating factors for justifying permanent employment and most

of which need not be mention for justification of employment unless there was a bono-

fide seniority system wherefore, qualified male applicants need not apply. Furthermore,

Ms. Colleen Williams windows for permanent employment was in December 1998; or

from December 1998 to December 1999; and/or in May 1999, not August; claims of

being courted else where, was not a marker for justification of permanent employment,

even if it was true that she was courted else where it would not exclude the material facts

and direct evidence of, fabricated false, fictitious, and fraudulent statement or entry

knowing it to be false as an attempt to avoid liability or conviction, all of which was the

motivating factors for permanent employment, these motivating factors are against the

service members obligations to perform service with the uniform service and **neither of**

**the quoted statements were entirely true** in fact most if not all was falsely and

fictitiously entered as fabricated markers which is now direct evidence that can be traced

to relevant events and/or windows of permanent employment opportunities. Howard

University/Howard University Hospital, schemes and tricks had been co-opted by

protective activity, simply put the August 26, 1999 "Justification Sheet" was disguised

**19**

and serves as fabricated evidence used as a pretext to discriminate. Keep in mind that in

the opening statement under "adverse action" references the elements as the cause for

discrimination as well as the military veterans obligation to perform services with the

uniform services. Howard University Hospital concerted actions was taken in part to

restrain Rossi M. Potts in the exercise of the rights guaranteed therein Title 29 § 157,

which is now in question for unlawful employment practices and possibly equitably

tolling pursuant, Title 38 Chapter 43 subchapter III § 4323(e). The February 9, 1999

official grievance was mad in part to balance past unequal sex pay distinctions between

women and men among other things, Supra, 8.01 and 14.01; Rossi M. Potts reached a

point in employment where protected actions had to be taken in opposition to the

employers unlawful employment practices. Therefore, official grievance was the action

of choice thus, given employer fair notice of future employment interest. Male class Mr.

Potts, Rossi M. claims that work was equal to the work of the opposite sex class Ms.

Colleen, Williams; the rate of his pay was less than the rate of the opposite sex; and the

working establishment was the same thus, both female and male class performed the

same work with unequal pay under the conditions of a selective system, wherefore, when

objective criteria was available under a subjective seniority system with commonly

accepted notions that apply uniformly to all applicants except for in this case, why?.

Rowe v. Cleveland Pneumatic Co. (6th Cir. 1982). Hypothetically speaking, Cf.

Ledergerber v. Stangler (8th Cir. 1997), if an equal opportunity was allotted for all or in

**20**

this Case for both female & male applicants or perspective applicants to have an equal

opportunity to bid as was prescribed by the Collective Bargaining Agreement (CBA),

therein Article X, section 6(a-d), than Howard University Hospital should have followed

the fundamentally accepted notion, with uniform contours for women and men

applicants, because available criteria for the Contract was established by the (CBA),

therefore, they should not have been ignored for the purpose of permanent hiring of Ms.

Colleen Williams, because she is no exception to uniform commonly excepted, contours.

Furthermore, any vacancies occurring within the immediate establishment or work place

should have been subjected to an objective seniority system that was established by the

(CBA), wherefore, commonly excepted criteria was available; therefore, salary histories

should have been founded on the premise of applicants claimed salary information or

noted entries of salary histories, provided that salary histories was a criteria for

determining ones pay or pay-grade for women and men applicants. However, that

equal opportunity was not distributed equally or fairly to all union members or afforded

to Rossi M. Potts, in fact he was excluded from the equal opportunity to bid and only one

female class Ms. Colleen Williams was accepted for permanent employment for

Echocardiography Technologist, Grade US/10. The terms of the February 9, 1999

grievance was to be made whole, for failure to comply with the "CBA" criteria stated

therein that grievance. Howard University Hospital, failed to comply with the United

States Laws and February 9, 1999, grievance and willfully dominated the formation and

**21**

administration of the grievance process, which is normally conducted by the local union

2094 representatives. Employers dominant role in this subject matter hindered shop

steward Alice Armstrong from performing her fiduciary duties which was an Act of

Reprisal and prohibit by U.S. Laws; to include the National Labor Relations Act Federal

Statutes, to avoid equal pay for equal work demands. The Equal Pay Act of 1963/Fair

Labor Standards Act of 1938, U.S.C. Title 29 § 206(d), laws was willfully disregarded by

Howard University Hospital's reckless concerted actions and malicious acts thus,

prohibited by other United States Laws, such as Title 2 District of Columbia Human

Rights Act of 1977 Chapter 14 Codes § 2-1401.11(a)(1) and (b), and § 2-1402.61, by

means of subterfuge/effect clause pursuant Chapter 14 Code §§ 2-1401.11, 2-1402.68,

thus, having that unlawful effect. Therefore, any reasonable person can conclude that the

public Federal and State Administrative Agencies had a right and a public duty to act and

they failed despite the request to reconsider, misstatements of substantial material facts;

regardless of their contemptuous defiance and/or ill will arbitrary and capricious factual

analysis that was made in part because, the officials and investigating officers relied on

Howard University Hospital facial fabricated evidence and Howard University General

Counsel false or perjured testimony; the public officials involved proceeded without

reconsidering the misstatements secondary to their personal discretion, which limited the

investigation by willfully failing to reconsider reviewing the misstatements of fictitious

substantial material facts. However, they insisted to dismiss the complaint based on their

**22**

personal conceptual analysis based from what is known as fabricated evidence, false

testimony and misstatement out of spite, thus, willfully disregarding there appointed

public duties. Therefore, any reasonable person can conclude that under the

circumstances of concealed substantial material facts that a circumstantial wheel

conspiracy may have occurred and/or may be currently in progress to conspire against

rights to injure and deprive me from full participation of exercising the United States

Constitution and Laws that are secure to me herein the District Court, which is prohibited

by U.S.C. Title 18 §§ 241, 372, therefore, I assert a claim under the headed entitlements

in good-faith. The fact of some material facts were willfully concealed to this present

day of entry of this Complaint which can be tested herein this District Court by applying

the hard-look doctrine and the fraudulent concealment rule to determine subsequent civil

and criminal violations prohibited by U.S.C.A. Title 18 § 1001(a)(1-3) and False

Statement and Accountability Act of 1996, during an evidentiary hearing.

**Causal Connection:**

The employer Howard University Hospital, voluntarily and intentionally, by willful misconduct was totally committed to practicing unlawful employment practices prohibited by Federal Statutes, Public Law, State Law/DCHRA-DCMR's, and Contract (CBA), even after they were provide with fair notices by grievance and memorandum from the United States, which was mentioned and/or claimed herein this "Count". Therefore, I believe that the causal connection herein this "Count" was because protected activities were taken in the form of an official grievance in connection to services of the uniform services for past denial of promotion opportunity. In the past Howard University Hospital refused to pay Rossi M. Potts the male class an equal or comparable salary that they paid Colleen William the female class when both classes was performing the same work in the same establishment or working area and they continuously denied him equal employment opportunities and/or opportunities to establish equal pay for equal work, because of his military obligation to perform service in the uniform service. Furthermore, the causal connection was in connection to a Memorandum asking the employer to comply with service obligation under, "Chapter 43, of Part III, Title 38, U.S. Code" and in addition to that protected activity other protective measures was take in the form of grievance thus, by contrast grievance language was dubbing promotion, and compliance. Therefore, I believe that Howard University Hospital had failed to comply and unlawful suspicious hiring methods, are now to be contested herein this Court for

**24**

retaliation under the Equal Pay Act of 1963/Fair Labor Standards Act of 1938 U.S.C.

Title 29 § 206(d); and for Discrimination against persons who serve in the uniform

services pursuant, Title 38 Chapter 43 subchapter II § 4311. My personal belief as to

why Howard University Hospital, voluntarily and/or intentionally decided to proceeded

on unlawful sex based pay distinctions in their employment practices was because of the

weight and timing of the protected activities meaning that the protect actions had simply

caught up to there willful misconduct and concerted past hiring methods. Howard

University Hospital's state of mind (**mens rea**), as follows: On February 9, 1999, when

an official grievance was filed thus, dubbing compliance, as it pertains to promotion

establish by both the United States Laws and the Contract (CBA), Howard University

Hospitals, resorted to a subjective selection system thus, to prevent Rossi M. Potts from

qualifying for any employment opportunities to establish equal pay for equal work.

Since, Rossi M. Potts, military obligation to perform services with the uniform

services protected activities had trumped unlawful and unreasonable hiring methods,

meaning that the protected action was a key resource to be used at the opportune moment

thus, preventing Howard University Hospital from hiring Ms. Colleen Williams in

December 1998 on a permanent appointment, which was a window of opportunity for

permanent employment, secondary to the death of Ms. Spencer, Jane on December 22,

1998. The forbidden act (**actus reus**), Howard University Hospital, predatory

employment practices was at work, because they could not produce any documents

for expected Federal and Local Government investigations proceedings during in-take of

interrogatories to prove that Ms. Colleen Williams was in fact hired on December 1, 1998

as a temporary employee, furthermore, they did not state her temporary employment

status, meaning was she hired on temporary appoint as a **wage employee** or to do a

**specific job**, as a temporary employee and that distinction is crucial and/or critical to

survive a malicious act, cause of continuous injury as in this "Case". Keep in mind that

Howard University, Senior Associate General Counsel, Leroy T. Jenkins Jr., Esq. is now

involved during administrative investigation conducted by Federal and Local

Governments proceedings. **Howard University/Howard University Hospital**, had an

appropriate window of opportunity to justify hiring Ms. Colleen Williams on a permanent

appointment in May of 1999, for her (12) month tenure, however, they did not because

they were trumped once again by the February 9, 1999 "Grievance", which would had

allowed Rossi M. Potts the service member an equal opportunity for promotion.

Therefore, Howard University/Howard University Hospital intentionally resorted

to practice unlawful **predatory** employment practices schemes and tricks by willful

misconduct, because of Rossi M. Potts, **military departures and obligations**, which is in

part a **motivating factor** for discrimination; and for that simple reason of departures and

obligations to the United States of America, they intentionally/willfully established a 3rd

widow of opportunity to permanently hire Ms. Colleen Williams however, this was the

only other coarse of action that existed, at that time which was **predatory in nature**,

26

which tends to have risk, a risk that they taught was worth while taken. See, Exhibit

Sheet, wherefore, clear and convincing fabricated evidence fair on its face, resides. Terry

v. Ashcroft (2d Cir. 2003). Therefore, any reasonable person can conclude that protected

actions were taken and that the employer adversely refused to comply, furthermore, they

willfully failed to comply and denied Rossi M. Potts from promotion, promotional

opportunities, employment opportunities, compensations, equal pay for equal work, etc.,

because of overwhelming protected measures taken by Rossi M. Potts to secure his

employment interest and status.  Howard University/Howard University Hospital,

intentionally tried by all possible means to deny Rossi M. Potts from

promotion/promotional opportunities, equal pay for equal work thus, creating unlawful

pay distinction between women and men, and different hiring standard on women and

men, to minimize their liability by any and/or all possible means necessary regardless of

the repercussion of prohibited unlawful violations they simply took a risk, a risk that they

taught was worth while taken, due to the lax laws and applied bad-man theory herein  this

crusade to discriminate, which was an unlawful operation used to under-mind public law

103-353, among other claimed violations herein this Complaint.  Howard

University/Howard University Hospital, adverse actions was reckless and malice with

disregard to the laws of the United States and the effects of the injuries continued even

after the resignation of Ms. Colleen Williams thus, causing continuous injuries that affect

his future employment status and compensations thus, ultimately lead to his termination.

**Witness:**

To testify against Howard University none. Witnesses who can attest to inferences are Ms. Colleen Williams, Echocardiographer; Dr. Bernice D. Brown, Director of Echocardiography Laboratory; Carolyn S. B. Johnson, Administrative Manager of Cardiovascular Disease Division; Local Union 2094 Vice President, Ms. Lorreta Stevenson; Local Union 2094 Shop Steward, Ms. Alice Armstrong; Local Union 2094 Shop Steward, Ms. Deborah McKissick; Mr. Robert, Foster, Administrative Manager of Cardiovascular Disease Division; Mr. Richard Rowe, Administrative Manager of Department of Medicine; Leroy T. Jenkins Jr., Esq., Senior Associate General Counsel.

**Injuries Suffered:**

Economic loss of compensations of employment benefits, fringed benefits from employee pension benefit plans, loss in wages/salary which is essential for establishing a salary history thus, has been compromised and adversely having a negative impact on making future salary demands in employment of similar University tenures, financial debts accrued from pay losses, medical expenses; loss of government job and benefits (ETS), for fear of losing employment with Howard University Hospital; Mental Anguish and actual pain and suffering from physical stresses in the form of benign fasiculations in the lower extremities associated with mental stress and/or psychological stress/sleep deprivation, mild degenerative disc disease at multiple levels associated with ergonomic and/or work related injuries, all injuries are long lasting and require treatment for chronic pain management, treatment varies.

**28**

**Remedies/Relief Demanded:**

I believe that I' am entitled to Relief under the United States Laws Federal Statute, DCHRA/DCMR's, and Contract (CBA), in good-faith. Temporary Retraining Order and/or Preliminary injunction to prevent irreparable injury from occurring because as you can see from the inferences stated herein this Complaint that there is no plain, adequate, and complete remedy at law and that an irreparable injury will result unless this relief is granted in the form of separate trials and/or managed in phases if consolidated furthermore, there is foreseeable prejudice, Northwest Airlines, Inc. v. Transport Workers Union (S. Ct. 1981); wherefore, the February 9, 1999 grievance pertains to serial violations. Since, Howard University Hospital, concerted actions was intended to deprive Rossi M. Potts of employment opportunity, which adversely affects his employment status and/or future employment status, that ultimately lead to his termination, because he participated with federal and state proceedings with the DCOHR/U.S. EEOC, and participated with the uniformed service and took additional steps to protect his employment interest for promotion opportunity to establish equal pay for equal work by filing a grievance which is a protected action in opposition to employers unlawful employment practices; Fine v. Ryan Intern. Airlines (7th Cir. 2002). Therefore, the Equal Pay Act of 1963/Fair Labor Standards Act of 1938, U.S.C. Title 29 § 206(d), shall not be excluded from "Grievance" wherefore, when he opted to establish equal pay for equal work thus, relying on the representative of his choice and to be made whole as was stated

**29**

therein that February 9, 1999. Albemarle Paper Co. v. Moody (S. Ct. 1975), the Equal

Pay Act of 1963/Fair Labor Standards Act of 1938, U.S.C. Title 29 § 206(d), has no Cap!

and the Court shall not depart from the fundamental terms of the (CBA) grievance or

fundamentally commonly accepted (CBA) contract, and uniform notions of a seniority

system when determining back pay interest, front pay, liquidated damages or any other

remedy pursuant, (Title 38 Chapter 43 subchapter I § 4302, individual affirmative relief

wherefore, instatement, reinstatement , wages increases, promotions, transfers, and

training, are all sought claims for relief, with respect to pension plan accruals under

ERISA/VALIC, and the rights to hours of service under ERISA for back pay received

and wherefore, agreements on the amount of back pay and front pay relief that the

employer cannot deduct its share of social security and medicare contributions from the

award) simply because those (CBA) Contract Articles & laws were dubbed in an official

contract grievance & public law 103-353 U.S.C. Title 38 Chapter 43 subchapter II §

4311(a); (Option) Consent Decree, monetary relief; (Option), Injunction to remedy

adverse actions that adversely affects his employment status and/or future employment

by reinstatement of employment to provide an opportunity to resign and pay

determinations must not depart from common fundamentals of the seniority system,

tenure is not needed wherefore, leave adjustments can be accounted for by leave of

absence until resignation is finalized therefore,  indexing is absolutely essential to be

made whole unless settlement stipulations are comparable to account for continuous

**30**

injuries; Front Pay; Remedial Seniority, to resign; Statutory Damages; Compensatory

Damages; Punitive Damages; Liquidated Damages; Joinder of Howard University

pursuant Federal Rule of Civil Procedure 19(a)(2); Equitable Tolling, pursuant Title VII

§ 2000e-9, if consolidated, or for willful misconduct by means of extrinsic/intrinsic

fraud/fraudulent concealment thus, for interfering with the formation and administration

of an investigation by federal, state, and contract investigating personnel; Consent Decree

Evidentiary Hearing pursuant, hard-look doctrine for settlement of out of Court;

Otherwise, the following rules may apply, Federal Rule of Civil Procedure 13(g) Cross-

Claim Against Co-Party and (i) Separate Trial/Separate Judgments pursuant, Rule 42 (b)

Separate Trial/Separate Judgments in accordance with the terms of Rule 54(b),

wherefore, Howard University General Counsel aided, abet, and invited the forbidden act

pursuant, DCHRA §§ 2-1402.64 and 2-1402.65 pursuant, The False Statements

Accountability Act of 1996 § 2, pursuant, U.S.C. Title 18 § 1001(a)(1-3), Co-Party

Howard University may be the be liable for all or part of the claims asserted herein this

action because the transaction that is the subject matter relating to the original action;

furthermore, this claim may or may not be subject to, Rule 13(h), pursuant Rule 19(c), as

it pertains to the local union 2094 members activities, joinder is undetermined due to

interference of the unions formation and administration process, secondary to the

concealment of material facts that is to be contested herein this District Court.

Consideration to joinder of remedies pursuant, Rule 18(b).

**31**

**To What End:**

Trial by jury or grand jury pursuant, Federal Rules of Civil Procedure, Rules 38(c), 39(b),

and (c), pursuant, Constitutionality/United States Constitutional Amendment VII, to

preserve Constitutional Rights.  Perhaps Settlement within reason.

Rosie m. Potts
14124 Bishop Claggitt Ct.
Upper Marlboro Md. 20772
(301) 574-2541

## EXHIBIT LIST (A)
## INITIAL EVIDENCE

1.) Notice of Suit Rights, 2 pages; Letter of Determination, 2 pages; Request for Reconsideration, 1 page.

2.) Honorable Discharge, Reserve Order, 1 page.

3.) Memorandum from the United States for 1st military obligation, 2 pages.

4.) Reserve Orders, for 2nd military obligation, 2 pages.

5.) February 9, 1999, grievance, 1 page.

6.) August 26, 1999, Justification Sheet/Fabricated Evidence, 1 page.

7.) Collective Bargaining Agreement Articles: I, X, XIII, XIV, XVII, XIX, XXI, XXIII, XXIV, and XXVII, from both new and old guides.

8.) September 25, 1999, Pre-Complaint Questionnaire Employment, 4 pages.

9.) Ms. Spencer, Jane, true date of death, December 22, 1998, 1 page.

10.) Ms. Williams, Colleen initial wage employee temporary appointment, 1 page.

11.) Interrogatories: June 5, 2002, *See*, numbers 3, 4, and 5. All three responses was fictiously falsifying testimony; willful misconduct to impede and prevent investigating officers from performing their public duties; simply put it was a malicious act to conceal material facts, which was totally unlawful.

## CERTIFICATE OF SERVICE

I Rossi M. Potts hereby certify that on this 24th day of April, 2008 that a copy

consisting of 34 pages of the forgoing Complaint was mailed to Howard University

and Howard University legal counsel thus, given them fair notice and fair

warning of Rossi M. Potts the Plaintiff, Pro Se litigant's legal interest.

**Timothy F. McCormack, Esq. & Jennifer E. Keyser, Esq.**
**Ballard Spahr Andrews & Ingersoll, LLP**
**300 East Lombard Street, 18th Floor**
**Baltimore, Maryland 21202-3268**

**Plaintiff, Pro Se, Litigator**
**Rossi M. Potts**
**14124 Bishop Claggett Ct.**
**Upper Marlboro, Maryland 20772**
**(301) 574-2541**

## EXHIBIT LIST (A)
## INITIAL EVIDENCE

1.) Notice of Suit Rights, 2 pages; Letter of Determination, 2 pages; Request for Reconsideration, 1 page.

2.) Honorable Discharge, Reserve Order, 1 page.

3.) Memorandum from the United States for 1st military obligation, 2 pages.

4.) Reserve Orders, for 2nd military obligation, 2 pages.

5.) February 9, 1999, grievance, 1 page.

6.) August 26, 1999, Justification Sheet/Fabricated Evidence, 1 page.

7.) Collective Bargaining Agreement Articles: I, X, XIII, XIV, XVII, XIX, XXI, XXIII, XXIV, and XXVII, from both new and old guides.

8.) September 25, 1999, Pre-Complaint Questionnaire Employment, 4 pages.

9.) Ms. Spencer, Jane, true date of death, December 22, 1998, 1 page.

10.) Ms. Williams, Colleen initial wage employee temporary appointment, 1 page.

11.) Interrogatories: June 5, 2002, *See*, numbers 3, 4, and 5. All three responses was fictitiously falsifying testimony; willful misconduct to impede and prevent investigating officers from performing their public duties; simply put it was a malicious act to conceal material facts, which was totally unlawful.

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Rossi M. Potts
14124 Bishop Claggett Court
Upper Marlboro, MD 20772

From: Washington DC Field Office
1801 L Street, N.W., Suite 100
Washington, DC 20507

| | |
|---|---|
| ☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 10C-2000-00048 | David Gonzalez, State & Local Coordinator | (202) 419-0714 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_For:_

Dana Hutter,
Acting Director

AUG 1 8 2004

(Date Mailed)

Enclosure(s)

cc:
HOWARD UNIVERSITY HOSPITAL
2400 6th Street, N.W.
Washington, DC 20059

08 0706

# FILED

APR 2 4 2008

Clerk, U.S. District and
Bankruptcy Courts

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Rossi Potts**
**14124 Bishop Claggette Ct**
**Upper Marlboro, MD 20772**

From: **Washington Field Office**
**1801 L Street, N.W.**
**Suite 100**
**Washington, DC 20507**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **10C-2002-00161** | **David Gonzalez,**<br>**State & Local Coordinator** | **(202) 419-0714** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of **this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Dana R Hutter*

**Dana Hutter,**
**Acting Director**

APR 1   2005

*(Date Mailed)*

Enclosure(s)

cc: **Norma B. Leftwich**
**HOWARD UNIVERSITY HOSPITAL**
**2400 6th Street, N W**
**Suite 320**
**Washington, DC 20060**

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**OFFICE OF HUMAN RIGHTS**

★ ★ ★

**Kenneth Saunders**
**Acting Director**

**Judiciary Square Office**
441 4ᵗʰ Street, NW Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 • Fax: (202) 727-9589

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl
Washington, DC 20020
Phone: (202) 727-4559 • Fax: (202) 645-6390

## LETTER OF DETERMINATION

August 19, 2003

Rossi M. Potts
14124 Bishop Claggett Court
Upper Marlboro, MD 20772

Reference:  Rossi Potts v. Howard University Hospital
            Docket No. 00-043-P (CN)
            EEOC No. 10CA00048

Dear Mr. Potts:

Pursuant to the District of Columbia Human Rights Act, *D.C. Code Sec 2-1401.01 et seq., as amended, (2002 Ed)*("DCHRA"), the District of Columbia Office of Human Rights (the "OHR") has completed the investigation of the above-referenced complaint. You are referred to as **"COMPLAINANT."** Howard University Hospital is referred to as **"RESPONDENT."**

## I.    ISSUE(S) PRESENTED

1.    Whether Respondent discriminated against the Complainant on the basis of his sex (male) when it hired a female Echocardiography Technician at a higher salary rather than promote him.

2.    Whether Respondent retaliated against the Complainant in violation of the DCHRA.

## II.    JURISDICTION

Respondent is an institution of higher education operating in the District of Columbia. The Complainant alleges that, in the course of his employ with Respondent, Respondent discriminated against him in violation of the DCHRA. The discriminatory acts allegedly occurred in the District of Columbia.



GOVERNMENT OF THE DISTRICT OF COLUMBIA
Office of Human Rights

**Judiciary Square Office**
441 4ᵗʰ Street, NW Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 • Fax:(202) 727-9589

**Kenneth L. Saunders**
**Director**

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl
Washington, DC 20020
Phone: (202) 727-4559 • Fax:(202) 645-6390

# LETTER OF DETERMINATION

December 21, 2004

Mr. Rossi Potts
14124 Bishop Claggette Court
Upper Marlboro, MD 20772

**Reference:**    ***Rossi Potts vs. Howard University Hospital***
**Docket No.: 02-240-P (CN)**
**EEOC No.: 10CA200161**

Dear Mr. Potts:

The Office of Human Rights (hereinafter "the OHR") has completed the investigation of the above-referenced complaint. You, are referred to as "**COMPLAINANT.**" Howard University Hospital is referred to as "**RESPONDENT.**" Complainant presented the following issues, which the OHR investigated.

## ISSUES PRESENTED

Whether Respondent retaliated against Complainant for filing a discrimination complaint with the OHR when it terminated Complainant's employment for placing a patient on a monitoring system without authorization and failing to monitor the patient.

## JURISDICTION

Respondent is a hospital. Respondent is located at 2041 Georgia Avenue, N.W., Washington, D.C. 20060. Respondent is not exempt for any known reason from the laws of the District of Columbia prohibiting unlawful discrimination. Therefore, Respondent is subject to the enforcement jurisdiction of the OHR.

## FINDINGS OF FACT

The OHR obtained its findings of fact from the following: (1) Complainant's sworn statement; (2) Respondent's Position Statement; (3) Respondent's sworn response to the

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Office of Human Rights**



**Judiciary Square Office**
441 4th Street, NW Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 • Fax: (202) 727-9589

**Kenneth L. Saunders**
**Acting Director**

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl
Washington, DC 20020
Phone: (202) 727-4559 • Fax: (202) 645-6390

## DETERMINATION ON COMPLAINANT'S
## REQUEST FOR RECONSIDERATION

September 30, 2003

Rossi M. Potts
14124 Bishop Clagget Court
Upper Marlboro, Maryland 20722

  RE: Docket No. 00-043P(CN)
     <u>Rossi M. Potts v. Howard University Hospital</u>

Dear Mr. Potts:

Pursuant to the District of Columbia Human Rights Act of 1977, D.C. Official Code §2-1401.01 et. seq. (2002 Ed.) ("the Act"), and 4 DCMR §719, the District of Columbia Office of Human Rights ("OHR") has reviewed your Request for Reconsideration of its No Probable Cause findings issued on August 19, 2003.

## I.  STANDARD FOR RECONSIDERATION

A Complainant must file a written Request for Reconsideration of a No Probable Cause Determination within 30 days of receipt of a Letter of Determination ("LOD") from the OHR. 4 DCMR 719.2. The grounds for reconsideration are limited to new evidence, misapplication of the laws, or misstatement of material facts. 4 DCMR 719.1.

The Complainant appears to assert new evidence as grounds for granting reconsideration of OHR's August 19, 2003 legal determination. Specifically, the Complainant submitted 1996 and 1997 position descriptions, a 1997 job offer from another institution, a 1997 counteroffer from Respondent, an attorney retainer agreement, a complaint and a release document related to his breach of contract litigation with Howard University, and a 1999 union grievance form related to his claims in the instant case. The Complainant also submitted the name Dr. Bernice Brown as a material witness.

The foregoing documents do not constitute new evidence in that the Complainant has not established that he discovered the documents only after the investigation of this case concluded. Moreover, some of the documents were reviewed in the original investigation. In no case do any of the documents contain relevant information not already known to the

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS AIR RESERVE PERSONNEL CENTER
DENVER, COLORADO 80280


RESERVE ORDER                                    12 SEP 2001
CA-013163


SRA POTTS ROSSI M                                 214904955
14124 BISHOP CLAGGETT COURT
UPPER MARLBORO, MD 20772


IS RELIEVED FROM ASSIGNMENT HQ ARPC (NNRPS  ) THIS STATION
AND HONORABLY DISCHARGED FROM THE AIR FORCE RESERVE
EFFECTIVE: 7 AUG 2001
AUTHORITY: AFI 36-3209


DD FORM 256 AF WILL BE FURNISHED

FOR THE COMMANDER

    OFFICIAL

PHYLLIS M. HUTCHINGS
CHIEF, SEPARATIONS DIVISION
DIRECTORATE OF PERSONNEL PROGRAM MANAGEMENT

                                    DISTRIBUTION
                                        CA



**DEPARTMENT OF THE AIR FORCE**
AIR FORCE RESERVE COMMAND



10 September 1998

MEMORANDUM FOR SUPERVISOR OF ROSSI M. POTTS
Attn.: Bernice Jackson, MD

FROM:    459 AES/CC
         3744 Louisiana Avenue
         Andrews AFB, MD  20331-4814

SUBJECT:  Air Force Reserve Participation/Active Duty Training

1. I certify that <u>SRA POTTS</u> is scheduled to perform mandatory military duty in the category of ACTIVE DUTY status on 14 SEPT. - 24 NOV. 1998.

2. In accordance with Chapter 43 of Part III, Title 38, U.S. Code you must allow Guard and Reserve members to attend military training, whether mandatory or voluntary. At the 459 AES in accordance with the above mention law we are also required to give advance notice of any upcoming military duty, but there may be a rare occasion that military necessity makes this impossible.

3. Should you need further information or clarification please contact me at 301/981-7122, Monday through Friday between 0800-1615.

4. Thank you for your continued support and sincerely regret any inconvenience this may have caused you.

MYRNA S. SANTIAGO, TSGT, USAFR
Air Reserve Technician, GS-07

# FACSIMILE ELECTRO MAIL TRANSMITTAL
*(This information collection, not subject to OMB review under PL-96, The Paperwork Reduction Act.)*

**WARNING!! - DO NOT TRANSMIT CLASSIFIED INFORMATION OVER UNSECURED TELECOMMUNICATIONS SYSTEMS. OFFICIAL DOD TELECOMMUNICATIONS SYSTEMS ARE SUBJECT TO MONITORING AND USE OF DOD TELECOMMUNICATIONS SYSTEMS CONSTITUTES CONSENT TO MONITORING.**

## SECTION I - TO BE COMPLETED BY ORIGINATOR

| CLASSIFICATION | TRANSMISSION | | |
|---|---|---|---|
| UNCLASSIFIED | ☐ IMMEDIATE   ☒ ROUTINE | PAGE 1 OF 2 PAGES | |
| ☒ FOR OFFICIAL USE ONLY | | | |

| TO (Office Symbol, Point of Contact, and Address) | | FAX NO. | |
|---|---|---|---|
| | | DSN | COMMERCIAL |
| SUPERVISOR OF ROSSI POTTS | | | 202-865-4449 |

| | VOICE NO. | |
|---|---|---|
| | DSN | COMMERCIAL |
| ELECTRONIC MAIL ADDRESS (E-Mail) | | |

**SUBJECT**

MANDATORY ACTIVE DUTY TRAINING

| FROM (Office Symbol, Point of Contact, and Address) | FAX NO. | |
|---|---|---|
| TSGT MYRNA SANTIAGO | DSN | COMMERCIAL |
| 459 AES/SGA | 858-6517 | 301-981-6517 |
| 3744 Louisiana Avenue | VOICE NO. | |
| Andrews AFB MD 20762-4814 | DSN | COMMERCIAL |
| ELECTRONIC MAIL ADDRESS (E-Mail) | 858-7123 | 301-981-7123 |

**REMARKS**

| RELEASER'S SIGNATURE | DATE | TIME |
|---|---|---|
| *Santiago* | 10 Sept. 98 | 1145 |

## SECTION II - TO BE COMPLETED BY ELECTRO MAIL OPERATOR

| DATE TRANSMITTED | TIME TRANSMITTED | TRANSMITTER'S SIGNATURE |
|---|---|---|
| | | |
| DATE ADDRESSEE CONTACTED | TIME ADDRESSEE CONTACTED | CONTACTOR'S SIGNATURE |
| | | |

AF FORM 3535, FEB 95 *(EF-V1)* (PerFORM PRO)          PREVIOUS EDITION IS OBSOLETE.

| REQUEST AND AUTHORIZATION FOR ACTIVE DUTY TRAINING/ACTIVE DUTY TOUR *(THIS FORM IS SUBJECT TO THE PRIVACY ACT OF 1974 - USE BLANKET PAS - AF FORM 11)* | | | BY ORDER OF THE SECRETARY OF THE AIR FORCE | |

| 1. NAME *(Last, First, MI)* POTTS, ROSSI M | 2. GRADE SRA | 3. SSN 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 | 4. SECURITY CLEARANCE UNKNOWN | |
|---|---|---|---|---|
| 5. PRESENT STREET ADDRESS 14124 BISHOP CLAGGETT COURT | 6. CITY UPPER MARLBORO | | 7. STATE MD | 8. ZIP CODE 20772-0000 |
| 9. UNIT OF ASSIGNMENT 459 AES | 10. LOCATION ANDREWS AFB MD 20762-4814 | | 11. PAS CODE S31LFN3K | |

V-132008.207

12. Member is ordered to ANNUAL for 5 * days plus authorized travel time.
Order need not be amended unless it exceeds N/A days.

| 13. WILL REPORT TO *(Unit and Location)* 459 AES ANDREWS AFB MD 20762-4814 | 14. REPORTING DATA *(Hour)     (Dy, Mo, Yr)* 0800   23 AUG 1999 | 15. RELEASE DATE *(Dy, Mo, Yr)* 27 AUG 1999 |
|---|---|---|
| | 16. CORPORATE LIMITS [ ] | 17. COMMUTING AREA [X] | 18. BAS CODE B |

19. REMARKS  AUTH: AFMAN 36-8001   *(File travel voucher and completed statement of tour of duty within 5 workdays after tour completion. Travel days will not exceed DODPM authorized travel time. Per diem is based on availability of gov't quarters and mess; contact the base billeting office since gov't quarters must be used when available. Turn in all promotional items (gifts, bonus tickets, etc) to the AFO.)*

Did you drive your POV? yes  POV Miles?   2 0    Sign and Date  *Rossi m. Potts*

TR cost N/A. Member pays full meal rate at government mess.  All government meals are available and directed. For payment of travel expenses on this order mail proper documentation to: AMU-270AN

| 20. TNG-CAT-IND | 21. TOUR-IND | | 22. MEAN CODE N/A | 23. MAN-DAY ID N/A |
|---|---|---|---|---|
| **ESTIMATED COST** | 24. TRAVEL   F 009447 $ 15.00    P 270621 | 25. PER DIEM  F 009430 $ 27.00    P 270658 | 26. OTHER $ 0.00 | 27. TOTAL $ 42.00 |

| 28. PAY AND ALLOWANCE | 5793700 509 6272 721.02 380100  A60102 | 29. FUNDS CERTIFYING OFFICIAL |
|---|---|---|
| TRAVEL AND PER DIEM | 5793700 509 6217 M15898 P721.15 P721.16 875800    96A90001 | |

| 30. APPROVING OFFICIAL *(Typed name,grade, DSN)* SHIRLEY J. BORN MSGT 857-7123 | 31. SIGNATURE  A signed letter requesting the issuance of this order is on file with the orders authenticating official | 32. DATE 26 JUL 1999 |
|---|---|---|
| 33. DEPARTMENT OF THE AIR FORCE *(Include designation & location of headquarters)* HQ 459TH AIRLIFT WING (AFRC) ANDREWS AFB, MD 20762-4814 | TDN:              FOR THE COMMANDER 37. SIGNATURE ELEMENT OF AUTHENTICATING OFFICIAL MARY M. HARTNETT FINANCIAL MANAGER (240) 857-5305 | |

| 34. RESERVE ORDER NO. D -12208 | 35. DATE 26 JUL 1999 | 36. DISTRIBUTION A or B | | |
|---|---|---|---|---|

STATEMENT OF TOUR OF DUTY

| 38. | LOCATION | HOUR (mil) | DAY | MONTH | | LOCATION | HOUR (mil) | DAY | MONTH | MODE OF TRAVEL |
|---|---|---|---|---|---|---|---|---|---|---|
| a. DEPART | HOR | 0715 | 23 | Aug | b. ARRIVE | Andrews AFB | 0800 | 23 | Aug | PA |
| c. DEPART | Andrews AFB | 1630 | 27 | | d. ARRIVE | HOR | 1715 | 27 | Aug | PA |

| 39. I certify that I have complied with the above order. The statements on this form are true and complete. If this tour was extended under the variable tour provisions, it was with my prior knowledge and consent. If a Federal Civil Service Employee, I certify that I have applied for appropriate leave. My Spouse (Circle One) was / was not in Active Duty status during this tour.  I (Circle One) did / did not occupy gov't quarters. | CERTIFICATION | | |
|---|---|---|---|
| | 42. Member reported for duty at          hours on          and was released from duty at          hours on | | |
| | 43. CERTIFYING OFFICIAL'S PRINTED NAME CAROL F. MELLOM, MAJ, USAFR, NC FLIGHT OPERATIONS NURSE, ART | | 44. DSN |
| 40. MEMBER'S SIGNATURE *Rossi m. Potts* | 41. DATE 9-11-99 | 45. CERTIFYING OFFICIAL'S SIGNATURE | | 46. DATE |
| 47. TIMEKEEPER STATEMENT  I certify receiving a copy of this order for civilian pay related review and processing. | 48. TIMEKEEPER SIGNATURE | | 49. FMO INITIALS |

AF FORM 938, JUL 96 (CG-1)   *(TBAS for Windows)*    PREVIOUS EDITION IS OBSOLETE

| REQUEST AND AUTHORIZATION FOR ACTIVE DUTY TRAINING/ACTIVE DUTY TOUR | BY ORDER OF THE SECRETARY |
|---|---|
| (THIS FORM IS SUBJECT TO THE PRIVACY ACT OF 1974 - USE BLANKET PAS - AF FORM 11) | OF THE AIR FORCE |

| 1. NAME (Last, First, MI) | 2. GRADE | 3. SSN | 4. SECURITY CLEARANCE |
|---|---|---|---|
| POTTS, ROSSI M | SRA | 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 | UNKNOWN |

| 5. PRESENT STREET ADDRESS | 6. CITY | 7. STATE | 8. ZIP CODE |
|---|---|---|---|
| 14124 BISHOP CLAGGETT COURT | UPPER MARLBORO | MD | 20772-0000 |

| 9. UNIT OF ASSIGNMENT | 10. LOCATION | 11. PAS CODE |
|---|---|---|
| 459 AES | ANDREWS AFB MD 20762-4814 | S31LFN3K |

V-131732.207

12. Member is ordered to ANNUAL for 5 * days plus authorized travel time.
Order need not be amended unless it exceeds N/A days.

| 13. WILL REPORT TO (Unit and Location) | 14. REPORTING DATA (Hour) (Dy, Mo, Yr) | 15. RELEASE DATE (Dy, Mo, Yr) |
|---|---|---|
| 459 AES<br>ANDREWS AFB MD  20762-4814 | 0800  16 AUG 1999 | 20 AUG 1999 |

| | 16. CORPORATE LIMITS | 17. COMMUTING AREA [X] | 18. BAS CODE  B |
|---|---|---|---|

19. REMARKS  AUTH: AFMAN 36-8001   (File travel voucher and completed statement of tour of duty within 5 workdays after tour completion. Travel days will not exceed DODPM authorized travel time. Per diem is based on availability of gov't quarters and mess; contact the base billeting office since gov't quarters must be used when available. Turn in all promotional items (gifts, bonus tickets, etc) to the AFO.)

Did you drive your POV? _yes_  POV Miles? _20_   Sign and Date  _Rossi M. Potts_   _9-11-99_

TR cost N/A.  Member pays full meal rate at government mess.  All government meals are available and directed. For payment of travel expenses on this order mail proper documentation  to: AMU-270AN

| 20. TNG-CAT-IND | 21. TOUR-IND | | 22. MEAN CODE<br>N/A | 23. MAN-DAY ID<br>N/A |
|---|---|---|---|---|
| **ESTIMATED COST** | 24. TRAVEL  F 009447 | 25. PER DIEM F 009450 | 26. OTHER | 27. TOTAL |
| | $ 15.00      P 270621 | $ 27.00     P 270658 | $ 0.00 | $ 42.00 |

| 28. PAY AND ALLOWANCE | 5793700 509 6272 721.02 380100  A60102 | 29. FUNDS CERTIFYING OFFICIAL |
|---|---|---|
| TRAVEL AND PER DIEM | 5793700 509 6217 M15898 P721.15 P721.16 875800   96A90001 | _Dennis Thurston_ |

| 30. APPROVING OFFICIAL (Typed name,grade, DSN) | 31. SIGNATURE  A signed letter requesting the issuance of this order is on file with the orders authenticating official | 32. DATE |
|---|---|---|
| SHIRLEY J. BORN MSGT 857-7123 | | 26 JUL 1999 |

| 33. DEPARTMENT OF THE AIR FORCE<br>(Include designation & location of headquarters) | TDN:          FOR THE COMMANDER |
|---|---|
| HQ 459TH AIRLIFT WING (AFRC)<br>ANDREWS AFB, MD 20762-4814 | 37. SIGNATURE ELEMENT OF AUTHENTICATING OFFICIAL<br><br>MARY M. HARTNETT<br>FINANCIAL MANAGER<br>(240) 857-5305 |

| 34. RESERVE ORDER NO. | 35. DATE | 36. DISTRIBUTION |
|---|---|---|
| D -12206 | 26 JUL 1999 | A or B |

38.
STATEMENT OF TOUR OF DUTY

| | LOCATION | HOUR (mil) | DAY | MONTH | | LOCATION | HOUR (mil) | DAY | MONTH | MODE OF TRAVEL |
|---|---|---|---|---|---|---|---|---|---|---|
| a.<br>DEPART | HOR | 0715 | 16 | Aug. | b.<br>ARRIVE | Andrews Air Force Base | 0800 | 16 | Aug. | PA |
| c.<br>DEPART | Andrews AFB | 1630 | 20 | Aug. | d.<br>ARRIVE | HOR | 1715 | 20 | Aug. | PA |

| 39. I certify that I have complied with the above order.  The statements on this form are true and complete.  If this tour was extended under the variable tour provisions, it was with my prior knowledge and consent.  If a Federal Civil Service Employee, I certify that I have applied for appropriate leave.  My Spouse (Circle One) was / was not in Active Duty status during this tour.  I (Circle One) did / did not occupy gov't quarters. | CERTIFICATION |
|---|---|
| | 42. Member reported for duty at        hours on        and was released from duty at        hours on |
| | 43. CERTIFYING OFFICIAL'S PRINTED NAME |  44. DSN |
| | CAROL F. MELLOM, MAJ, USAFR, NC<br>FLIGHT OPERATIONS NURSE, ART | |

| 40. MEMBER'S SIGNATURE | 41. DATE | 45. CERTIFYING OFFICIAL'S SIGNATURE | 46. DATE |
|---|---|---|---|
| _Rossi M. Potts_ | 9-11-99 | | |

| 47. TIMEKEEPER STATEMENT  I certify receiving a copy of this order for civilian pay related review and processing. | 48. TIMEKEEPER SIGNATURE | 49. FMO INITIALS |
|---|---|---|

AF FORM 938, JUL 96 (CG-1)   (TBAS for Windows)      PREVIOUS EDITION IS OBSOLETE

AFSCME LOCAL *2094*
STEP *2*



**AFSCME.**
*in the public service*

# OFFICIAL GRIEVANCE FORM

NAME OF EMPLOYEE _Rossi Potts_                DEPARTMENT _Medicine_

CLASSIFICATION _Echo tech_

WORK LOCATION _____ IMMEDIATE SUPERVISOR _Mr. Foster_

TITLE _____

**STATEMENT OF GRIEVANCE:**

List applicable violation: _Article X Section 6. (A) (B)(C)(D)_
_Section (7) Promotions_ _____
_____
_____

Adjustment required: _To give Mr. Potts an opportunity to apply for the position as stated in Article X. And to be made whole._

I authorize the A.F.S.C.M.E. Local _2094_ as my representative to act for me in the disposition of this grievance

Date _Feb 9, 1999_       Signature of Employee _Rossi m. Potts_

Signature of Union Representative _Alice Armstrong_       Title _Shop Steward_

Date Presented to Management Representative _____

Signature _____       Title _____

Disposition of Grievance: _____
_____
_____

**THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.**

ORIGINAL TO _Mr. Rowe_

COPY _Dauretta Stevenson VP, Chief Shop Steward_

COPY: LOCAL UNION GRIEVANCE FILE

**NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE FILE OF LOCAL UNION.**

  THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES       F29

HU

H O W A R D
UNIVERSITY
HOSPITAL

No. 009304

**Justification Sheet**

Recommendation Date: 08/26/99

Name & Title (Mr. Mrs. Dr., etc): <u>Williams, Colleen P. (Ms.)</u>

Social Security Number: [redacted]

Echocardiography Tech

Ms. Williams is a graduate of an approved school for Cardiac Sonography.  Additionally, she has demonstrated exemplary skills during her tenure as a temporary employee.

Currently, the Echocardiography Lab has one technician who is currently on Military Leave for a total of three (3) months and the senior technologist, Ms. Spencer, is now deceased.  Ms. Williams has been employed on a temporary appointment since December 1, 1998.  Our need to continue the employment of Ms. Williams is urgent. Services will greatly suffer with only one tech., especially if the other tech has to be away from his for illness, vacation, Military Leave, etc.  The recruitment of qualified applicants has been hard because of the very tight market and the limited number of ECHO Technologists.

Eligible for Benefits                                Leave Category 4

Uniform Allowance

HR-03 (12/96)



Agreement

Between

HOWARD UNIVERSITY/
HOWARD UNIVERSITY HOSPITAL

and

THE AMERICAN FEDERATION
OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES,
AFL-CIO
DISTRICT COUNCIL 20, LOCAL 2094

# ARTICLE I
## RECOGNITION

For the duration of this Agreement, Council 20, Local Union 2094 shall be the exclusive bargaining agent for the purpose of establishing wages, hours and conditions of employment for regular, probational staff, temporary and part time employees* of Howard University Hospital, (herein called the Employer), excluding: all employees covered by other contracts, personnel employees, trainees, requisition and student employees, supervisory, confidential office employees, administrative and managerial employees, physical and occupational therapists. A list of job titles and classification for all positions covered by this agreement is available.

• A regular employee is one who has satisfactorily completed a probationary (trial) period of service at the University in a budgeted position and who has been approved for continuing employment.

A probationary employee is one hired to work for a trial period of 6 months with the expectation of continued employment.

• A temporary employee is one who is hired to do a specific job for a period up to 12 months. This period of time may be extended but only to finish the specific job for which the employee was hired.

# ARTICLE II
## UNION SECURITY

It is agreed that all employees covered by this Agreement now in the employ of the Employer who are now members of the Union, and all who voluntarily become members of the Union at any time during the

2

life of this Agreement, shall maintain their membership for the life of this agreement.

In keeping with the principle that employees who benefit by this Agreement should share in the cost of administering the contract, the parties agree that any present or future employee who is not a Union member or who does not make application for membership shall pay to the Union each month a service charge in an amount equal to, but not more than, the regular monthly dues.

# ARTICLE III
## CHECKOFF AND UNION DUES

Upon receipt of a signed authorization, the Employer agrees to deduct from each employee's pay the Union membership initiation fee, assessment and dues in accordance with the authorization. The amounts to be deducted shall be certified to the Employer by the Director of District Council 20, and the aggregate deductions of all employees shall be remitted, together with an itemized statement, to the Treasurer and President of AFSCME, Local 2094 by the 15th of the succeeding month after the payday for which such deductions are made. If any employee has insufficient earnings in the first payroll period of any month to equal dues or initiation fee deductions, the deduction shall be made in the next payroll period in which the employee has sufficient earnings.

The Union agrees to indemnify and hold the Employer harmless from any and all claims, suits, judgments, attachments and any other liability resulting from any deduction from wages in accordance with this Article. The Union agrees to pay to the Hospital a transaction charge of $0.10 per transaction to partially defray the cost of providing checkoff service and segregating the data with respect to Union dues, and the notice of new

3

person who is assigned to relieve (cover for) the leave approving supervisor will become the leave approving supervisor for the period of that absence.

**Section 10. Use of Annual Leave on Death In Immediate Family**

Annual leave may be granted in connection with the death of a member of the employee's immediate family. If no accrued annual leave is available, leave may be advanced up to a maximum of three days.

Consideration shall be given to religious beliefs, cultural beliefs, geographic distances involved and the extent of family responsibilities when granting the leave.

Supervisors will endeavor to comply with the request of the employee as to the time and amount of leave to be taken.

Employees are urged to seek advance approval for this leave.

**ARTICLE VIII**

**REMISSION OF TUITION**

**Section 1. Faculty and Staff**

Employees covered by this agreement are entitled to remission of tuition in accordance with established University policy.

**ARTICLE IX**

**OVERTIME**

**Section 1. Rate of Pay**

Employees will be paid for overtime hours at a rate of one and one-half their regular hourly rate of pay for the time worked as described below:

All worked hours in excess of eight hours in any work day consistent with the Hospital policy for the administration of overtime.

18

All worked hours in excess of forty (40) hours in any basic work week.

Overtime pay for holidays worked will be paid in accordance with the Hospital overtime policy.

**Section 2. Distribution**

Within an organizational unit overtime will be assigned successively on the basis of seniority to employees in a particular classification to the extent possible.

**Section 3. Required Continuing Education Programs**

Participation in required continuing education programs outside of the regularly scheduled working hours will be viewed as time worked and compensated as overtime.

**ARTICLE X**

**SENIORITY**

**Section 1. Definitions** Derived to begin (illeg)

(a) Seniority means an employee's continuous length of service with the Employer. Continuous service shall be interrupted only by separation because of resignation, discharge for a just cause, failure to return upon expiration of a leave of absence, failure to respond to a recall from layoff or retirement.

(b) Demotion - means the reassignment of an employee from a position in one job classification to a lower paying position in the same or another job classification.

19

(c) Consolidation - means the combining of duties of two or more jobs.

(d) The Employer shall annually compile a seniority list for employees covered by this Contract. Five copies shall be furnished to the Union. Seniority list for employees covered by this Contract. Five copies shall be furnished to the Union. Seniority job title, and last date of hire. The list will be in seniority order.

## Section 2. Demotions

Demotions may be made to avoid laying off employees or for reasons of incompetence.

## Section 3. Layoff

In the event it becomes necessary to lay off employees for any reasons, the Union shall have the opportunity of discussing alternate actions with the Employer. If layoff cannot be avoided, employees shall be laid off in the inverse order of their seniority within the unit. At least 30 days written notice shall be given to any affected employee prior to any such action. Any affected employee who is not so notified shall receive regular pay for the thirty-day period or any part thereof for which notification was not given.

## Section 4. Recall

New employees shall not be hired in a job vacancy until all employees in the job classification for the vacancy, who were laid off within a 12-month period immediately preceding the decision to re-hire, are notified in writing and given an opportunity for re-employment. Employees recalled under this provision shall be in accordance with their seniority. Employees shall have thirty (30) days to respond to recall.

20

## Section 5. Consolidation or Elimination of Jobs

The Union shall be given a thirty (30) day written notice of employees displaced or whose jobs are otherwise eliminated as a result of the development of new facilities, consolidation, technological changes, or for any other reason. Such employees shall be encouraged to apply for other vacancies within the University.

An employee so placed in other positions within the hospital shall maintain his seniority without regard to former job classification.

## Section 6. Filling Vacancies

(a) Whenever a permanent position vacancy occurs within a department the Employer shall post a description of such opening on bulletin boards convenient to work areas and on all official bulletin boards for a period of ten (10) working days or through such procedures as are otherwise agreed to between the Union and the Employer. The Union shall be furnished a copy of all such advertisements. The President of Local #2094 shall receive such copies as soon as possible prior to the advertisements being made public.

(b) Employees may bid on filling of such job by submitting a written application to the Employer prior to the expiration date of the posting.

(c) In filling job vacancies within a department, applications shall be considered on the basis of continuous length of service within the department, ability, qualifications, and physical fitness to perform the job. Applicants from outside the University shall not be considered unless no qualified employee applies for the position.

21

(d) Unsuccessful candidates who reach the departmental interview stage for a position will be notified in writing by the respective department head within one ( 1 ) week following the hiring of a candidate.

## ✴ Section 7. Promotions

The term promotion as used in this provision means the advancement of an employee to a higher paying position.

All promotions shall be made on the basis of seniority if the knowledge, training, ability, work performance, and skill of the respective applicants are considered equal.

Each employee shall be given an opportunity for promotion without regard to race, sex, creed, religion, sexual preference, or national origin.

## Section 8. Other Applications

Where all factors are equal as determined by the employer, questions involving temporary job assignments and vacation schedules shall be determined on the basis of seniority.

## Section 9. Superseniority for shop stewards

In the event of a layoff, the shop stewards and officers of Local 2094 shall be the last to be laid off from their respective job classification provided they have the qualifications, skill and ability to perform the available work. The Union will provide the Executive Director with a list annually of those stewards and officers who are entitled to superseniority.

22

---

## ARTICLE XI
## WAGES

### Section 1. Wages

1. During the first contract year the bargaining unit employees shall receive the following salary adjustments:

a. A contract signing bonus amount equal to 1.5 percent of the employees annual base pay in effect October 1, 1991. This one time non-recurring, non-annualized, lump-sum bonus shall be paid to those bargaining unit employees who were in active pay status between October 1, 1991 through the contract signing date.

b. A one percent ( 1 %) salary adjustment effective first full pay period after December 1, 1992.

c. A one percent (1 %) salary adjustment effective first full pay period after April 30, 1993.

2. Effective the first full pay period after October 1, 1993, the start of the second full year of this Agreement, the bargaining unit salary scale then in effect will be adjusted by two (2%) percent.

3. Effective the first full pay period after October 1, 1994, the start of the third full year of this Agreement, the bargaining unit salary scale then in effect will be adjusted by two and one-half (2.5%) percent.

4. All pay adjustments will be made in accordance with University/Hospital compensation procedures.

23



(g) Attempts will be made to group employees assigned sleeping arrangements outside of the main building so that persons do not have to travel alone. In those instances when a single employee has to go to an outside sleeping facility, an escort will be provided.

(h) An employee shall be paid overtime for hours worked after his/her regular shift until the emergency is over. Employees shall receive on-call pay for non-work time while sleeping at the Hospital or hotel (Howard Inn) at Management's request.

*Pre-termination & Termination, are not*

## ARTICLE XIII
## DISCIPLINE AND DISCHARGE

**Section 1.** *the language only applied to discipline; language in the*
Except for cases in which employee conduct is likely to result in damage to hospital property or injury to other individuals, disciplinary measures shall be taken in the following order:

1. Counseling

2. Reprimand (Must be in writing)

3. Suspension (Notice must be given in writing)

4. Termination (Notice must be given in writing)

Notice of any disciplinary action or measure imposed upon an employee must be received by the employee within 15 work days, after the matter upon which the proposed action is based. All discipline shall

30

be for just cause. Discipline of probationary and temporary employees is not grievable and will be governed by applicable University regulations.

## COUNSELING

Employees may be counseled by their supervisors whenever the need arises. Counseling shall include a meeting between the employee and his/her immediate supervisor. The employee at his/her option may elect to have Union representation present. Confirmation of such counseling should be given in writing.

## REPRIMANDS

1. Counseling and reprimands shall be given by immediate supervisors to employees under their supervision. *? counsel is no, not by immed. Supervisor but...*

2. Written Reprimands may be made part of the official Personnel Folders, with a copy to the Union President. Written Reprimands shall be removed from the employee's Personnel Folder after twelve months and may not be held against the employee in any further disciplinary matter thereafter.

3. If a Supervisor has reason to reprimand an employee, it should be done in a manner that will not embarrass the employee before other employees or the public.

## SUSPENSION

Suspension may be recommended within the employee's chain of supervision when the best interest

31

of the University will be served by the employee's removal from duty or when an employee is deemed to be a potential danger to persons and/or property.

## SUSPENSION PENDING INVESTIGATION

This type of suspension is given when the nature of the employee's conduct jeopardizes the safety of others or University property. It is for investigatory purposes only and shall not be considered a disciplinary suspension. Employees serving this type of suspension shall do so without loss of leave or salary for the period of suspension.

A Suspension Pending Investigation does not require a formal Personnel Recommendation form, but, does require written notification to the Executive Director and the Department of Personnel Management. The suspension, normally, should not exceed five (5) working days.

## SUSPENSION FOR DISCIPLINARY REASONS

This type of suspension is recommended when an employee demonstrates unsatisfactory work performance, conduct incompatible with the welfare of the University, or other offenses which warrant disciplinary action less severe than termination. Such suspensions are without pay and require a formal Personnel Recommendation form supported by a justification for the suspension. The suspension is limited to a maximum of five (5) working days.

Prior to any suspension or termination actions, except where an employee demonstrates violence or inability to function in a rational manner or where an employee is suspended pending investigation, the employee shall be notified in writing of the proposed

action with a copy to the union president. A shop steward shall be given an opportunity to represent the employee.

In suspension and discharge cases the employee shall have the opportunity to file a grievance at the 3rd step of the grievance procedure. Employees found to have been improperly suspended or discharged shall be made whole with respect to pay, benefits, and seniority.

## ARTICLE XIV
## GRIEVANCE PROCEDURE

A grievance shall be any dispute arising out of the terms of this Agreement and shall be processed within ten (10) working days of the date of the grievance or the employee's knowledge of its occurrence as follows:

Step 1 - The aggrieved employee and the Union Steward shall discuss the Grievance with the employee's immediate Supervisor. If the Grievance is not here resolved, it shall be reduced to writing and presented to the Department Head with three (3) days following the aforementioned meeting.

The Supervisor and/or the employee has the right to waive, in writing, Step One.

Step 2 - The Department Head, or his designee, shall meet with the employee and the Union Steward within five (5) work days of the receipt of the grievance. A written answer to the grievance shall be given within five (5) days subsequent to the meeting.



Step 3 - If the Step 2 answer is not satisfactory, the Union shall submit the Grievance to the Office of the Executive Director within five (5) days of receipt of the Step 2 reply. The Executive Director or his designee shall meet with the employee and the Union Steward within five (5) days of submission of the grievance at the 2nd Step. A written reply shall be given within five (5) days of the Step 3 Meeting, with a courtesy copy to the President of Local #2094.

Step 4 - If the Step 3 answer is not satisfactory to the Union it may appeal the Grievance to arbitration within seven (7) days of receipt of the Step 3 reply by notification to the Vice President, and to the American Arbitration Association for naming an arbitrator. The selection of the arbitrator and the conduct of the arbitration hearing shall be in accordance with the rules of the American Arbitration Association. The arbitrator shall conduct the hearing within twenty days (20) of the Notice to the Association and shall render his award which, shall be final and binding upon the parties within thirty (30) days of the close of the hearing.

The periods of time indicated herein shall be exclusive of Saturdays, Sundays, or Holidays. The arbitrator's fee shall be shared equally by the University and the Union. Any employee found to be unjustly suspended or discharged shall be reimbursed with full compensation for all time lost and with full restoration of all rights and conditions of the employment.

Employees and Union Stewards involved in the Grievance and arbitration procedures shall do so without loss of pay. Calendar day requirements may be waived by mutual consent.

34

Disputes arising out of interpretation of any provision of this Agreement shall be subject to arbitration on initiation of either party.

## ARTICLE XV
## PERSONNEL FOLDERS

**Section 1.**

All employees covered by this Agreement and/or an authorized Union representatives will be granted free access to review the contents of an employee's personnel folder which shall be maintained in the Department of Personnel Administration. Copies of material contained therein will be provided upon request.

**Section 2.**

Employees shall have the right to respond to any material filed in their personnel folders and such responses shall be attached to material to which it relates.

**Section 3.**

All adverse material one (1) year old or older will be removed from an employee's personnel folder.

## ARTICLE XVI
## STRIKES AND LOCKOUTS

During the term of this agreement neither the Union nor any employee shall (a) engage in or in any way encourage or sanction any strike, work stoppage, slow down, or other action which shall interrupt or interfere with the normal business activity of the Employer or (b) prevent or attempt to prevent the access of employees, students or business invitees on to the Employer's

35



property. During the term of this Agreement, the Employer will not engage in any lockout of employees at the University or any of its facilities.

### ARTICLE XVII
### CONTRACTING OUT

During the term of this Agreement, the University shall not contract out work performed by employees covered by this Agreement except, where manpower and equipment in the University are not consistently available to perform such work. To ascertain whether manpower is available, the University will allow employees to voluntarily sign up for overtime to be worked before contracting out, where possible.

Any other direction to contract out made by the Employer would be preceded by a fourteen (14) day written notice to the Union of such intent, except in emergency situations. The Union will be notified of all such emergencies as they occur. The Union will have the opportunity to meet with the University to discuss the feasibility of such planned action and to present its counter argument.

Any employee whose job security has been jeopardized by any contracting out shall have prior right to any vacant job within the University for which the employee is qualified and the University shall ensure that this policy is carried out.

### ARTICLE XVIII
### SAFETY AND HEALTH

### Section 1. General Provisions

The University shall make reasonable provisions for the safety and health of its employees in accordance with the laws of the District of Columbia and the provisions of the Federal Occupational Safety and Health Act.

36

### Section 2. Health and Safety Committee

The Union shall be represented by one member and one alternate on the Hospital Safety Committee.

### Section 3.

All health and safety equipment that is deemed necessary for a particular job as indicated in the job description, shall be furnished by the University.

The University will provide adequate training on the use of proper work methods, protective measures and protective equipment to employees required to perform hazardous duties.

The University shall notify employees immediately when an unsafe or unhealthy working condition or situation of imminent danger is determined to exist. Corrective measures will be promptly initiated in accordance with OSHA procedures.

### Section 4.

No employee shall be required to use hazardous equipment for which such employee is inadequately trained. Where a dispute of hazardous conditions arises, the Hospital Safety Officer shall make a determination on the matter in question. The Hospital Safety Officer's professional ruling shall prevail until the grievance procedure is completed. However, if there is a disagreement over whether or not a hazard exists, either party may request a health hazard evaluation by the National Institute for Occupational Safety and Health.

### Section 5. Light Duty or Modified Work Assignment

The University will make every effort to provide work that honors the medical restrictions for persons who have sustained documented on the job injuries. In order to be considered for such an assignment the employee shall present a written description of these

37



restrictions and their duration as provided by a qualified medical/dental practitioner. At the end of thirty (30) days, the employee shall be reevaluated for further consideration of assignment, based on the written description of restrictions, as provided by a qualified medical/dental practitioner.

**Section 6. Confidential Employee Assistance Program (EAP)**

(a) The Hospital provides a confidential Employee Assistance Program which is administered by the Director of the Employee Health Unit of the Hospital. The EAP is neither a job performance nor disciplinary program, but rather a program designed to motivate and assist employees in resolving medical/behavioral problems.

(b) Privacy of Records. - All records and activities within the EAP are maintained in confidence by the EAP under the supervision of the Director of The Employee Health Unit.

(c) Referral - There are several types of referral, including: **Self-Referral** - Employees can independently seek assistance through EAP. **Management Referral** - An employee's supervisor should refer the employee to the EAP when the employee's job performance is negatively affected because there may be underlying medical/behavioral problems; **Union Steward Referral** - Union officials are encouraged to refer employees to the EAP.

(d) The Union and Management agree to meet on a regular basis to explore ways to improve the EAP.

38

**Section 7. Video Display Terminals**

(a) Video Display Terminal (VDT's) refer to a computer terminal which displays information on a television-like screen.

(b) Howard University Hospital agrees to continue its practice of servicing and maintaining each VDT by authorized technicians at least yearly. A record of maintenance on each machine will be maintained and made available to the Union upon request.

(c) Employees whose full time assignment is to work on VDT's shall not be required to work on a VDT continuously for more than two and one-half (2.5) hours without a break. When possible, the employee and the supervisor should schedule such breaks to coincide with the fifteen (15) minute rest break and the forty-five minute lunch break.

(d) Optical Examination. Employer agrees to provide an optical examination as a part of the yearly physical examination on all unit members. Employees working directly with CRT Equipment (VDT) may schedule, through employee health, an additional examination during the year.

**ARTICLE XIX**
**GENERAL PROVISIONS**

**Section 1. Pledge Against Discrimination and Coercion**

The provisions of this agreement shall be applied equally to all employees in the bargaining unit without discrimination as to age, sex, religion, marital status, race, color, creed, national origin, political affiliation or sexual preference.

39



The Union shall share equally with the Employer the responsibility for applying this provision of the agreement.

All references to employees in this Agreement designate both sexes and wherever the male gender is used it shall be construed to include male and female employees.

The Employer agrees not to interfere with the rights of employees to become members of the Union, and there shall be no discrimination, interference, restraint or coercion by the Employer or any Employer representative against any employee because of Union membership or because of any employee acting in an official capacity on behalf of the Union at mutually agreed upon periods.

The Union recognizes its responsibility as bargaining agent and agrees to represent all employees in the bargaining unit without discrimination, interference, restraint, or coercion.

## Section 2. Union Bulletin Boards

The Employer agrees to furnish and maintain a suitable bulletin board space at appropriate places to be used by the Union. Places shall be mutually determined by the Employer and the Union.

## Section 3. Union Representatives
### (a) Visits

The Employer agrees that accredited representatives of the American Federation of State, County, and Municipal Employees whether local union representatives, district council representatives, or international representatives shall have full and free access to conduct Union business through established University channels.

Persons serving as duly elected officers of the Union shall be allowed reasonable time, subject to the University division head's concurrence, to conduct such internal Union business, without pay as is necessary during duty hours. Such persons shall be identified in writing to the University.

### (b) Stewards

Union Stewards shall be designated by the Union and shall be recognized as employee representatives. At least one steward shall be available for the evening and night shifts. The Union will supply the Employer with lists of stewards names which shall be posted on appropriate bulletin boards. The Union shall notify the Employer of changes in the roster of stewards. Stewards are authorized to perform and discharge Union duties and responsibilities which may be assigned to them under the terms of this Agreement. Such activities should be conducted away from the work site and in the Union office when available.

Stewards shall obtain permission from their immediate supervisors prior to leaving their work assignments to properly and expeditiously carry out their Union duties. Whenever possible stewards will inform their supervisors of the amount of official time they estimate they will be using. The Union will make reasonable efforts to use stewards whose hours of work correspond to those of a grievant(s) or potential grievant(s). When contacting an employee, the Steward will first report to and obtain permission to see the employee from his/her supervisor, and such permission will be granted unless the employee cannot be immediately relieved from his assigned

involved. Any other labor-management business which requires attendance of the Union President must have prior approval of University Officials.

#### (d) Union Business

Employees elected to any Union office or selected by the Union to do work which takes them from their employment with the Employer may, at the written request of the Union and the concurrence of the Employer, be granted a leave of absence, without pay. The leave of absence shall not exceed twelve (12) months.

#### Section 4. Uniforms

Uniforms will be prescribed by the Employer when uniforms are necessary or desirable because of the nature of the employee's duties, including his contacts with patients, or the public in an official capacity requiring his identification. The uniform will be the most economical type adequate for the purpose. Less than full uniform requirements may be applied in the following situations: temporary employees; employees temporarily assigned to positions for which uniforms are prescribed; employees appointed on an on-call basis, or when actually employed (day-to-day).

The Employer reserves the right to determine which employees will wear uniforms or protective clothing, and the right to prescribe the kind and color of uniforms or protective clothing. Employees required to wear uniforms or protective clothing which are not furnished will be given a prorated monetary allowance toward the cost of purchase and maintenance. The Employer will launder, clean, maintain and replace those uniforms it furnishes employees, except where the employer provides wash and wear smocks. In such cases, the employee is expected to maintain the cleanli-

43

duties, in which case permission will be granted as soon as possible thereafter. If the immediate supervisor is unavailable, permission will be requested from the next highest level of supervision. Requests by Stewards for permission to meet with employees and/or by employees to meet with Stewards will require a brief explanation to the supervisor of the problem involved and identification of the area to be visited. A Steward thus engaged will report back to his/her supervisor on completion of such duties and return to his/her job. The Employer agrees that there shall be no restraint, interference, coercion, or discrimination against a Steward in the performance of such duties.

Compensatory time will be granted when a Union Steward returns to the workplace during off-duty hours to conduct official union business, up to a maximum accrual balance of thirty-two (32) hours. Hours accrued in excess of the maximum balance shall be compensated at regular straight pay.

Union Stewards shall present proper identification when conducting union business.

#### (c) Employee Union Officials

The Union President, or in his absence, the Vice President shall be authorized to conduct labor-management business which is common to the bargaining unit without loss of pay. The President may pre-schedule no more than one (1) hour each day to conduct business in the Hospital Union Office. Such schedule shall be with the approval of the supervisor

42

ness of those smocks. Those uniforms lost or damaged by the laundry will be replaced at no cost to the employee. The Employer will not be responsible for cleaning, laundering or maintaining those uniforms, or protective clothing for which employees receive allowances. The Employer also reserves the right to establish instructions governing the issuance, replacement and return of uniforms or protective clothing.

Allowances will be paid twice a year at six month intervals to eligible employees on the payroll. These allowances shall be paid to full-time employees, even though the employees are not on the rolls during a portion of the pay period. Such allowance shall be jointly determined by the Union and the Employer.

All other full-time and part-time employees working on regularly scheduled tours of duty shall be paid that proportion of the pro-rated allowance which their regularly scheduled tour of duty bears to eighty hours.

Allowance shall not be paid to employees in a non-pay status during an entire pay period (80 hours), to employees on terminal leave, or to employees while suspended or separated unless later reinstated. Such allowance shall not exceed three hundred and fifty dollars ($3.50.00) per year.

### Section 5. Agreement

The Employer and the Union agree to furnish each member-employee a copy of this Agreement at no cost to the employee. Costs shall be borne equally by the Employer and the Union and, printing arrangements to be mutually agreed upon.

The Employer agrees to allow presentation of Union information to new employees at University conducted orientation sessions.

The Employer shall furnish, quarterly, to the Union a list of employees entering or leaving the bargaining unit.

### Section 6. Training and Career Ladder Programs

(a) The Employer and the Union recognize the need for increased cooperation in the areas of the employee training and upward mobility. Both parties subscribe to the principles of career ladders and promotion from within, consistent with other articles of this contract. Therefore, both parties agree to establish a joint employee management committee, composed of three (3) unit employees and three (3) persons selected by the Employer which shall cooperate fully in the development of training and career ladder programs.

(b) The Union and the Hospital propose the establishment of a Task Force to be composed of three representatives from each to review a jointly sponsored union management upper-mobility program that will provide for upper mobility within the bargaining unit. The Task Force may call upon the expertise of the Hospital and the Union to achieve its task.

Joint sponsorship includes support by the Hospital and the Union. The Task Force should prepare its initial report to the President of the Union and the Executive Director of the Hospital in six months.

(c) In order to provide on the job training, career advancement opportunities, and upward mobility, the parties agree that employees may participate in an upward mobility training program and, in doing so, voluntarily perform duties outside their job classification, without compensation.

In each instance, the employee and the employer through the Office of Education and Training, will first jointly develop a training plan which establishes realistic skill enhancement goals for the employee and an individualized training plan to achieve the goals. The Union will be given the opportunity to review and approve the plan.

Employees successfully completing their respective upward mobility training programs will be given priority consideration to fill vacancies for which they qualify, as a result of the training, prior to Howard University Hospital attempting to fill position from the outside.

### Section 7. Departmental Policy Manuals

The Employer agrees that there shall be no departmental policies or guidelines in conflict with the provisions of this contract and further agrees to meet and negotiate with the Union on implementation and impact of changes in personnel policies, practices and other matters affecting working conditions of bargaining unit members prior to the issuance of the policies and guidelines.

The Employer shall furnish the Union with copies of all departmental Policy Manuals.

★ **Section 8. New and Changed Classifications**

The Employer may establish salary grades for new or changed occupational classifications and present

46

such rates of pay to the Union. Failure to agree on the final rate shall not preclude the filing of a grievance. Any higher rate determined through the grievance procedure or arbitration shall be retroactive to the date an employee worked in the new or changed classification.

The Employer may request a desk audit of his position from the Office of Personnel Administration if his current job description does not reflect the true nature of his work.

### Section 9. Job Descriptions

The Employer shall supply an up-to-date copy of all position descriptions covering job categories in the bargaining unit to the Union within 90 days of the effective date of this contract.

### Section 10. Work out of Classification

All assignments to work out of classification will be in writing either by a written memorandum, written agreement, or an official personnel recommendation.

Individuals required to work out of classification for less than ten days will have such hours accumulated and shall be paid bi-monthly for those hours.

Individuals required to work out of classification for ten or more consecutive days shall have a personnel recommendation submitted for the payment of those hours by the tenth day of such work.

Payment for the higher classification shall be paid at the beginning step, or at a step that will yield a rate of at least $0.50 per hour above the employee's current salary. Payment will be distributed in the pay period following receipt of the approved recommendation.

### Section 11. Sexual Harassment

The University and the Union recognize that sexual harassment is a form of misconduct which undermines the integrity of employment relationships and adverse-

47

IN WITNESS WHEREOF, the parties hereto have set their hands the
29th day of September, 1992.

FOR UNIVERSITY/EMPLOYER:

James A. Fletcher
Vice President for Business
and Fiscal Affairs

## ARTICLE XXIII
## SAVINGS CLAUSE

In the event any Article, Section, or Portion of this Agreement should be held invalid and unenforceable by any Court of competent jurisdiction, such decision shall apply only to the specific Article, Section, or portion thereof specified in the Court's decision; and upon issuance of such a decision, the Employer and the Union agree to immediately negotiate a substitute for the invalidated Article, Section, or Portion thereof.

## ARTICLE XXIV
## MAINTENANCE OF BENEFITS

### Section 1

(a) The employer agrees that all benefits, working conditions, and procedures affecting employees prior to the date of this Agreement shall be continued during the term of this Agreement, except, where such benefits, working conditions and procedures are altered by this Agreement, or by mutual agreement of the parties.

(b) The employer agrees, that eligible employees shall be covered by the Retirement Plan as set forth in the University President's memorandum and attachments dated June 19, 1987. The terms of said plan shall be incorporated by reference into this Agreement.

(c) A part-time employee who works at least twenty (20) hours per week is eligible for appropriately pro-rated health and life insurance, leave and tuition remission in accordance with established University policy. The insurance benefits will be available on the first day of the next benefit year (open season).

(d) Eligible part-time employees may contribute up to twenty (20%) of their salary into the University sponsored Supplemental Retirement Account in accordance with established University policy.

Eligible employees covered by this Agreement shall be covered by the University sponsored Savings Plan in accordance with established University policy.

ARTICLE XXV
HEALTH CARE

Section 1.
(a) Initial treatment for employees who become ill or injured on the job shall be provided through the Hospital Employee Health unit or the Emergency Room at no cost to the Employee.

(b) The University shall make reasonable provisions for the Health of its employees in accordance with the laws of the District of Columbia and the provisions of Federal Occupational Safety and Health Act. These provisions cover preemployment and annual physical at no expense to the employee, including chest x-ray and other exams when necessary. Each employee must assume responsibilities for adherence to the policy on annual physical.

54

ARTICLE XXVI
HEALTH AND WELFARE FUND

The University agrees to provide life insurance coverage of 1-1/2 times the yearly salary of each employee.

ARTICLE XXVII
PERFORMANCE EVALUATION

Section 1.
It is understood that employees and supervisors will work together in developing an employee's skills, abilities and attitudes that contribute to success on the job. The supervisor will assist staff in developing their skills and abilities through training and counseling sessions, and identifying areas where improvement is needed. The Supervisor will provide written guidelines for improving deficiencies. It is further understood that success will also depend upon the employee's performance and willingness to improve deficiencies.

Section 2.
Each employee shall have an informal (verbal) performance evaluation at the halfway point in the probationary period and a written performance evaluation at the end of probation. Thereafter, each employee shall receive on his/her anniversary date, a written performance evaluation from the immediate supervisor. An employee shall receive a three (3) month notice of the due date of the evaluation.

All evaluations must be completed and reviewed with the employee within thirty (30) days after the due date in a scheduled evaluation conference. The employee shall have an opportunity to comment orally

55

and in writing on the evaluation. Each employee shall acknowledge that the evaluation has been reviewed by signing and dating the document. Each employee shall receive a copy of the evaluation.

**Section 3.**

Employees cited for deficiencies and incompetence shall be given a forty-five (45) day period within which to correct any cited deficiencies. They shall receive counseling to communicate basic and positive means of correcting deficiencies and promoting professional growth. The supervisor shall discuss the employee's strengths and weaknesses with suggestions and advice for improvement. The supervisor will provide the proper training and supervision necessary to do the job correctly. Such improvement must be maintained during the next annual evaluation period.

**Section 4.**

If any employee is not satisfied with his/her evaluation he/she may discuss it with the next level supervisor up through the department head and division director. The reviewer shall have the authority to change the evaluation.

Such discussions regarding the performance evaluation are not considered as filing of a formal grievance as defined in Article XIV. If an employee does decide to grieve his/her annual performance evaluation, it must be done in accordance with Article XIV.

**Section 5.**

Performance Evaluations shall be removed from the employee's personnel folder every two years.

**Section 6.**

Management and the Union will work together to develop and improve performance evaluation forms.

Evaluation forms shall be standardized to the extent possible. Employees receiving satisfactory or above average evaluations shall be awarded appropriate recognition.

# ARTICLE XXVIII
## TERMINATION

This Agreement shall be effective as of this 28th day of September, 1992, and shall remain in in full force and effect until the 30th day of September, 1995

It shall be automatically renewed from year to year thereafter unless either party shall notify the other in writing 90 days prior to the anniversary date that it desires to modify this Agreement. In the event that such notice is given, negotiations shall begin not later than 60 days prior to the anniversary date; this Agreement shall remain in full force and be effective during the period of negotiations or until notice of termination of this Agreement is provided to the other party in the manner set forth in the following paragraph.

In the event that either party desires to terminate this Agreement, written notice must be given to the other party not less than 10 days prior to the desired termination date which shall not be before the anniversary date set forth in the preceding paragraph.

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## HOWARD UNIVERSITY

## AND

## THE AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, LOCAL 2094

### EFFECTIVE

### OCTOBER 18, 1999
### THROUGH
### OCTOBER 27, 2001

EXH · 18

## PREAMBLE

This AGREEMENT made and entered into by and between Howard University of the City of Washington, D.C., hereinafter called the Employer and the American Federation of State, County, and Municipal Employees, Local 2094, hereinafter called the Union.

**WHEREAS:**

It is the desire of the parties hereto to establish certain standards of wages, hours and conditions of employment which will prevail between them during the term of this Agreement, and it is the desire of said parties to regulate mutual relations with the view towards securing harmonious cooperation between them; and

**WHEREAS:**

Both parties to this Agreement recognize that any economic provision of said Agreement will depend upon appropriation to the University from the Congress; including provisions of Public Law 87-262 and the formal transfer Agreement between The Department of Health, Education, and Welfare and the University. If there is a change in the congressional funding which affects the Hospital's ability to fully perform the terms of this Agreement, the Hospital shall notify the union and negotiate. Should the parties reach impasse the provisions outlined under the National Labor Relations Act governing hospitals shall apply and the prohibitions of Article XVI shall not apply.

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth the parties hereto agree as follows:

## ARTICLE I

### RECOGNITION

For the duration of this Agreement, Local Union 2094 shall be the exclusive bargaining agent for the purpose of establishing wages, hours and conditions of employment for regular, probationary staff, temporary and part time employees of Howard University Hospital, (herein called the Employer), excluding: all employees covered by other contracts, personnel employees, trainees, requisition and student employees, supervisory, confidential office employees, administrative and managerial employees, physical and occupational therapists. A list of job titles and classification for all positions covered by this agreement is available.

    a.    A regular employee is one who has satisfactorily completed a probationary (trial) period of service at

the University in a budgeted position and who has been approved for continuing employment.

b.  A probationary employee is one hired to work for a trial period of 6 months with the expectation of continued employment.

c.  A temporary employee is one who is hired to do a specific job for a period up to 12 months.  This period of time may be extended but only to finish the specific job for which the employee was hired.

This agreement shall not apply to wage employees.  A wage employee is defined as one who is so informed at the time of employment or those who are hired for special projects or to replace an employee on leave of absence.  If a wage employee is hired to replace an employee on leave of absence, the period of wage employment may be extended to cover the entire period of the leave of absence.  The Union shall be notified in the event of any such extension.  With the exception of wage employees hired to replace an employee on leave of absence, employees who have completed twelve (12) months of continuous service shall immediately become regular full-time employees.  After a wage employee completes twelve (12) months continuous service and becomes a regular employee that employee's seniority shall run from six (6) months after his original date of hire.  Employees involuntarily separated from the Employer shall resume the accrual of service upon re-hire provided such employees are called back within six (6) months.

## ARTICLE II

## UNION SECURITY

It is agreed that all employees covered by this Agreement now in the employ of the Employer who are now members of the Union, and all who voluntarily become members of the Union at any time during the life of this Agreement, shall maintain their membership for the life of this agreement.

In keeping with the principle that employees who benefit by this Agreement should share in the cost of administering the contract, the parties agree that any present or future employee who is not a Union member or who does not make application for membership shall pay to the Union each month a service charge in an amount equal to, but not more than, the regular monthly dues.

2

## Section 3.  Required Continuing Education Programs

Participation in required continuing education programs outside of the regularly scheduled working hours will be viewed as time worked and compensated as overtime.  Bargaining unit members shall be provided administrative leave for the purposes of Continuing Education Activities required by the Hospital.  The Hospital shall provide funding assistance for bargaining unit employees to participate in such activities.

### ARTICLE X

### SENIORITY

## Section 1.  Definitions

a. Seniority - means an employee's continuous length of service with the Employer.  Continuous service shall be interrupted only if an employee is laid off for a period of twenty-four (24) months, separation because of resignation, discharge for just cause, failure to return upon expiration of a leave of absence, failure to respond to a recall from a layoff or retirement.

b. Demotion - means the reassignment of an employee from a position in one Job classification to a lower paying position in the same or another job classification.

c. Consolidation - means the combining of duties of two or more jobs.

d. The Employer shall annually compile a seniority list for employees covered by this Contract.  Five copies shall be furnished to the Union.  Seniority will be listed showing name, unit or department, job title, and last date of hire.  The list will be in seniority order.

## Section 2.  Demotions

Demotions may be made to avoid laying off employees or for reasons of incompetence.

## Section 3.  Layoff

a. In the event it becomes necessary to layoff employees for any reason, the union shall be provided notice in

EXH.
G

advance of any layoff. The union shall have the opportunity to discuss alternative actions with the Hospital. If requested by the union and prior to the implementation of a layoff, a Local 2094/Management committee of equal membership, not to exceed seven individuals per team will be established to coordinate and facilitate the process. This impact bargaining will commence immediately after the announcement of a reduction-in-force. At least thirty (30) days written notice shall be given to any affected employee prior to being laid off. Any affected employee who is not so notified shall receive regular pay for the thirty (30) day period or any part thereof for which notification was not given. Employees shall be laid off in the inverse order of their total bargaining unit seniority by classification within the department.

b.  Prior to the layoff of any full-time permanent employee within the department, layoffs shall be in the following order:

   i.   Temporary and wage employees,

   ii.  Probationary employees,

   iii. Regular employees in the inverse order of their Bargaining unit seniority by classification within the department.

c.  In the event an employee is laid off in one classification within a department and there is a vacancy in another classification within that department for which the employee may be qualified the employee may request such position by application and if deemed qualified as determined by the current position description and the Office of Human Resources, the employee shall be assigned the vacant position. In the event there is more than one employee laid off, the greatest bargaining unit seniority shall prevail in assigning qualified employees. For this purpose, an employee maybe placed into a vacant job of an equal, higher, or lower grade level than his current grade level. Jobs in the same grade or lower, which are occupied by temporary, wage or probationary employees are to be considered vacant.

d.  Within ten (10) days following ratification of this agreement the parties agree to meet and confer on

19

establishing job classification groupings within a department. The parties will establish a job grouping list within 60 days of the initial meeting. The parties further agree to meet, review, and modify, if necessary, those job classification groupings annually. In the event that agreement cannot be reached between the parties on the classifications and groupings, the parties agree to submit this matter to Expedited Arbitration for resolution. An employee within a job classification grouping and who is subject to layoff will be placed in another job, at the same or lower level, within the same job classification grouping and for which that employee has greater bargaining unit seniority than the incumbent bargaining unit employee.

e.     When a senior employee displaces a junior employee in a lower classification, the senior employee's salary shall remain the same unless it exceeds the maximum salary of the junior employees' job classification, in which case it shall be reduced to the maximum salary of the lower classification.

f.     Every attempt will be made to keep employees on their current shift. If that is not possible, the employees shall work the shift assigned to the vacant position or the shift worked by the employee who is displaced. If such assignment is not possible, the employee shall work the shift assigned by the hospital.

## Section 4.  Recall

a.     Employees who are laid off shall have their names placed on a recall list and the employee shall be recalled in accordance with the provisions herein. Employees shall continue to maintain seniority up to twelve (12) months while on layoff. Employees shall be recalled in accordance with their seniority by classification and department in the reverse order in which they were laid off. New employees, wage employees, temporary employees and contractors performing bargaining unit work or functions shall not be hired into a job vacancy until all employees in the job classification who were laid off within a twelve (12) month period immediately preceding the decision to hire are notified in writing and recalled. If a vacancy occurs within a job classification for which no employee in that classification has recall rights, then laid off employees within the department with the most

20

bargaining unity seniority shall receive preferential consideration if such employee is qualified for and able to do the work; if not, the next senior bargaining unit employee within the department shall receive preferential consideration.

b.   An employee on layoff who is recalled/reemployed into a classification different from the job classification the employee held at the time he was laid off, such employee will serve a ninety (90) day probationary period to determine if he can perform the job duties of the new classification.  If the employee cannot satisfactorily perform such duties, he will be laid off and retain whatever recall rights he had prior to being placed into the new classification.  In the event that bargaining unit classifications are modified, changed, consolidated or created such classifications shall be placed in the appropriate job groupings.

c.   The Hospital shall notify employees recalled or to be preferentially considered through certified mail with return receipt with a copy to the Union.  Employees shall have thirty (30) days to respond to recall or an invitation for preferential consideration.  Laid off wage, temporary, and probationary employees have no recall privileges.

## Section 5.  Consolidation or Elimination of Jobs

The Union shall be given thirty (30) days written notice of employees displaced or whose jobs are otherwise eliminated as a result of the development of new facilities, consolidation, technological changes, or for any other reason.  Such employees shall be displaced in accordance with the layoff provision of this article.  In the event that technological changes are such that employees within the classification performing the work will be laid off or displaced because they do not have the necessary skills to perform the work, the hospital agrees to consider training in an attempt to allow the employees in question to acquire the skills necessary to perform the work using the new technology.

Should an employee be unable to satisfactorily complete the required training, the employee shall be laid off and retain any recall rights and be encouraged to apply for other vacancies with the University.  An employee so placed in other positions within the hospital shall maintain his seniority without regard to former job classification.

21

## Section 6. Filling Vacancies

a.   Whenever a permanent position vacancy occurs within a department the Employer shall post a description of such opening on bulletin boards convenient to work areas and on all official bulletin boards for a period of ten (10) working days or through such procedures as are otherwise agreed to between the Union and the Employer. The Union shall be furnished a copy of all such advertisements. The President of Local 2094 shall receive such copies as soon as possible prior to the advertisements being made public.

b.   Employees may bid on filling of such job by submitting a written application to the Employer prior to the expiration date of the posting.

c.   In filling job vacancies within a department, applications shall be considered on the basis of continuous length of service within the department, ability, qualifications, and physical fitness to perform the job. Applicants from outside the University shall not be considered unless no qualified employee applies for the position.

d.   Unsuccessful candidates who reach the departmental interview stage for a position will be notified in writing by the respective department head within one (1) week following the hiring of a candidate.

## Section 7. Promotions

The term promotion as used in this provision means the advancement of an employee to a higher paying position. All promotions shall be made on the basis of seniority if the knowledge, training, ability, work performance, and skill of the respective applicants are considered equal.

Each employee shall be given an opportunity for promotion without regard to race, sex, creed, religion, sexual preference, or national origin.

## Section 8. Other Applications

Where all factors are equal as determined by the employer, questions involving temporary job assignments and vacation schedules shall be determined on the basis of seniority.

22

EXH
I

over.

i.  Employees shall receive on-call pay for non-work time while sleeping at the Hospital or hotel at Management's request.

## ARTICLE XIII

## DISCIPLINE AND DISCHARGE

Except for cases where employee conduct is likely to cause immediate danger or injury to persons or property of Howard University Hospital, or serious misconduct, disciplinary measures shall be taken in the following order;

a.  Counseling

b.  Reprimand (Must be in writing)

c.  Suspension (Notice must be given in writing)

d.  Termination (Notice must be given in writing)

Serious misconduct shall include such conduct as:

a.  Sleeping on the job in the work area.

b.  Insubordination or refusal to comply with supervisors directives.

c.  Use or possession of illegal drug.

d.  Use or possession of alcohol on hospital property.

e.  Use or possession of firearms, knives, or weapons.

f.  Fighting and/or threats.

g.  Theft or falsification of records.

Notice of any disciplinary action or measure imposed upon an employee must be received by the employee within 15 work days after the matter upon which the proposed action is based. All discipline shall be for just cause. Discipline of probationary and temporary employees is not grievable and will be governed by applicable University regulations.

Progressive disciplinary actions shall be specifically

27

identified and dealt with individually.  Unrelated issues shall not be considered in current disciplinary action.

## COUNSELING

Employees may be counseled by their supervisors whenever the need arises.  Counseling shall include a meeting between the employee and his/her immediate supervisor.  The employee at his/her option may elect to have Union representation present.  Confirmation of such counseling should be given in writing.

## REPRIMANDS

a.  Counseling and reprimands shall be given by immediate supervisors to employees under their supervision.

b.  Written Reprimands may be made part of the official Personnel Folders, with a copy to the Union President.  Written Reprimands shall be removed from the employee's Personnel Folder after twelve months and may not be held against the employee in any further disciplinary matter thereafter.

c.  If a Supervisor has reason to reprimand an employee, it should be done in a manner that will not embarrass the employee before other employees or the public.

## SUSPENSION

Suspension may be recommended within the employee's chain of supervision when the best interest of the University will be served by the employee's removal from duty or when an employee is deemed to be a potential danger to persons and/or property.

## SUSPENSION PENDING INVESTIGATION

This type of suspension is given when the nature of the employee's conduct jeopardizes the safety of others or University property.  It is for investigatory purposes only and shall not be considered a disciplinary suspension.  Employees serving this type of suspension shall do so without loss of leave or salary for the period of suspension.

A Suspension Pending Investigation does not require a formal Personnel Recommendation form, but, does require written notification to the Executive Director and the Department of Personnel Management.  The suspension, normally, should not

28

exceed five (5) working days.

## SUSPENSION FOR DISCIPLINARY REASONS

This type of suspension is recommended when an employee demonstrates unsatisfactory work performance, conduct incompatible with the welfare of the University, or other offenses which warrant disciplinary action less severe than termination.  Such suspensions are without pay and require a formal Personnel Recommendation form supported by a justification for the suspension.  The suspension is limited to a maximum of five (5) working days.

Prior to any suspension or termination actions, except where an employee demonstrates violence or inability to function in a rational manner or where an employee is suspended pending investigation, the employee shall be notified in writing of the proposed action with a copy to the union president.  A shop steward shall be given an opportunity to represent the employee.

In suspension and discharge cases the employee shall have the opportunity to file a grievance at the 3rd step of the grievance procedure.  Employees found to have been improperly suspended or discharged shall be made whole with respect to pay, benefits, and seniority.

## ARTICLE XIV

## GRIEVANCE PROCEDURE

A grievance shall be any dispute arising out of the terms of this Agreement and shall be processed within ten (10) working days of the date of the grievance or the employee's knowledge of its occurrence as follows:

Step 1 -  The aggrieved employee and the Union Steward shall discuss the Grievance with the employee's immediate Supervisor.  If the Grievance is not here resolved, it shall be reduced to writing and presented to the Department Head within three (3) days following the aforementioned meeting.

The Supervisor and/or the employee has the right to waive, in writing, Step One.

Step 2 -  The Division Director or his designee shall meet with the employee and the Union Representative within five

29

(5) workdays of the receipt of the grievance.  An answer to the grievance shall be given within five (5) days subsequent to the meeting.

Step 3 -  If the Step 2 answer is not satisfactory, the Union shall submit the grievance to the Office of the Executive Director within five (5) days of receipt of the Step 2 reply.  The Executive Director and/or his designee or representatives shall meet with the employee and the Union Representative within five (5) days of submission of the grievance at the 2nd Step.  A written reply shall be given within five (5) days of the Step 3 meeting, with a courtesy copy to the President of Local 2094.

Step 4 -  If the Step 3 answer is not satisfactory to the Union, it may appeal the grievance to arbitration within seven (7) days of receipt of the Step 3 reply by notification to the Vice-President of Health Affairs and either the American Arbitration Association (AAA) or Federal Mediation Conciliation Service (FMCS) for naming an arbitrator.  The arbitrator's fee and filing fee shall be borne by the losing party, except that the arbitrator may, where he/she deems the circumstances so warrant, as in the case of a split decision, assess the party a different percentage of his/her fee and expenses.

The selection of the arbitrator and the conduct of the arbitration hearing shall be in accordance with the rules of the FMCS or AAA.  The arbitrator shall conduct the hearing within twenty (20) days of the notice to AAA or FMCS and shall render his award, which shall be final and binding upon the parties within thirty (30) days of the close of the hearing.

The periods of time indicated herein shall be exclusive of Saturdays, Sundays, or Holidays.  Any employee found to be unjustly suspended or discharged shall be reimbursed with full compensation for all time lost and with full restoration of all rights and conditions of the employment.

## Expedited Arbitration

a.  The parties agree to use Expedited Arbitration for the purposes of resolution of discharge cases.  All requests for Expedited Arbitration must be in writing.

30

b.   The parties agree to alternatively use FMCS and AAA
     when invoking this article and request a panel of
     arbitrators who are available to hear this case within
     ten (10) working days.  Upon receiving such panel, the
     parties shall immediately confer and choose an
     arbitrator.  If the parties cannot agree on an
     arbitrator, the parties agree that FMCS or AAA shall
     appoint an arbitrator to hear the case.

c.   The hearing shall be conducted normally in one (1) day
     and the arbitrator shall render his or her decision no
     later than ten (10) days following the close of the
     hearing.  While it may be brief, the decision shall be
     in writing and must contain the rationale utilized by
     the arbitrator for either granting or denying the
     grievance.  The hearing shall adhere to the established
     rules of FMCS or AAA for Expedited Arbitration.

d.   The parties, by mutual consent, may invoke Expedited
     Arbitration for grievances other than discharge cases.

Employees and union Stewards involved in the Grievance and
procedures shall do so without loss of pay.  Calendar day
requirements may be waived by mutual consent.

Disputes arising out of interpretation of any provision of
this Agreement shall be subject to arbitration on initiation of
either party.

## ARTICLE XV

## PERSONNEL FOLDERS

### Section 1.

All employees covered by this Agreement and/or an authorized
Union representatives will be granted free access to review the
contents of an employee's personnel folder which shall be
maintained in the Department of Personnel Administration.  Copies
of material contained therein will be provided upon request.

### Section 2.

Employees shall have the right to respond to any material
filed in their personnel folders and such responses shall be
attached to material to which it relates.

The Employer agrees that outstanding performance and note

31

worthy special acts of service, including those not included in the employee's position description, should be noted as part of the employee's employment record.

### Section 3.

All adverse material one (1) year old or older will be removed from an employee's personnel folder.

## ARTICLE XVI

### STRIKES AND LOCKOUTS

During the term of this agreement neither the Union nor any employee shall (a) engage in or in any way encourage or sanction any strike, work stoppage, slow down, or other action which shall interrupt or interfere with the normal business activity of the Employer or (b) prevent or attempt to prevent the access of Employer's employees, students or business invites on to the Employer's property. During the term of this Agreement, the Employer will not engage in any lockout of employees at the University or any of its facilities.

## ARTICLE XVII

### CONTRACTING OUT

During the life of this Agreement, bargaining unit work may be contracted out for the following reasons:

a.   Where equipment is not consistently available;

b.   Where manpower is not consistently available and there are insufficient employees to perform such work through voluntary overtime; or

c.   In cases of emergencies.

In other cases where the need to contract out exists, the Hospital agrees to provide a fourteen (14) day written notice to the Union of its intent to contract out. Thereafter, should the Union request it, the Hospital shall meet with the Union to discuss the feasibility of the planned contracting out and alternatives, and shall commence bargaining on the decision and impact of the contracting out.

32

continuously for more than two and one-half (2.5) hours without a break.  When possible, the employee and the supervisor should schedule such breaks to coincide with the fifteen (15) minute rest break and the forty-five minute lunch break.

d.    Optical Examination

Employer agrees to provide an optical examination as a part of the yearly physical examination on all unit members.  Employees working directly with CRT Equipment (VDT) may schedule, through employee health, an additional examination during the year.

## ARTICLE XXI

### GENERAL PROVISIONS

## Section 1.  Pledge Against Discrimination and Coercion

The provisions of this agreement shall be applied equally to all employees in the bargaining unit without discrimination as to age, sex, religion, marital status, race, color, creed, national origin, political affiliation or sexual preference.

The Union shall share equally with the Employer the responsibility for applying this provision of the agreement.

All references to employees in this Agreement designate both sexes and wherever the male gender is used it shall be construed to include male and female employees.

The Employer agrees not to interfere with the rights of employees to become members of the Union, and there shall be no discrimination, interference, restraint or coercion by the Employer or any Employer representative against any employee because of Union membership or because of any employee acting in an official capacity on behalf of the Union at mutually agreed upon periods.

The Union recognizes its responsibility as bargaining agent and agrees to represent all employees in the bargaining unit without discrimination, interference, restraint, or coercion.

## Section 2.  Union Bulletin Boards

The Employer agrees to furnish and maintain a suitable

36

bulletin board space at appropriate places to be used by the Union.   Places shall be mutually determined by the Employer and the Union.

## Section 3.  Union Representatives

### a.    Visits

The Employer agrees that accredited representatives of the American Federation of State, County, and Municipal Employees whether local union representatives, district council representatives, or international representatives shall have full and free access to conduct Union business through established University channels.

Persons serving as duly elected officers of the Union shall be allowed reasonable time, subject to the University division head's concurrence, to conduct such internal Union business, without pay as is necessary during duty hours.   Such persons shall be identified in writing to the University.

### b.    Stewards

Union Stewards shall be designated by the Union and shall be recognized as employee representatives.   At least one steward shall be available for the evening and night shifts.   The Union will supply the Employer with lists of stewards names which shall be posted on appropriate bulletin boards.   The Union shall notify the Employer of changes in the roster of stewards.

Stewards are authorized to perform and discharge Union duties and responsibilities which may be assigned to them under the terms of this Agreement.   Such activities should be conducted away from the work site and in the Union office when available.

Stewards shall obtain permission from their immediate supervisors prior to leaving their work assignments to properly and expeditiously carry out their Union duties.   Whenever possible stewards will inform their supervisors of the amount of official time they estimate they will be using.   The Union will make reasonable efforts to use stewards whose hours of work correspond to those of a grievant(s) or potential grievant(s). When contacting an employee, the Steward will first report to and obtain permission to see the employee from his/her supervisor, and such permission will be granted unless the employee cannot be immediately relieved from his assigned duties, in which case permission will be granted as soon as possible thereafter.   If the immediate supervisor is unavailable, permission will be

requested from the next highest level of supervision. Requests by Stewards for permission to meet with employees and/or by employees to meet with Stewards will require a brief explanation to the supervisor of the problem involved and identification of the area to be visited. A Steward thus engaged will report back to his/her supervisor on completion of such duties and return to his/her job. The Employer agrees that there shall be no restraint, interference, coercion, or discrimination against a Steward in the performance of such duties.

Compensatory time will be granted when a Union Steward returns to the workplace during off-duty hours to conduct official union business up to a maximum accrual balance of thirty-two (32) hours. Hours accrued in excess of the maximum balance shall be compensated at regular straight pay.

Union Stewards shall present proper identification when conducting union business.

### c. Employee Union Officials

The Union President, or in his absence, the Vice President shall be authorized to conduct labor-management business which is common to the bargaining unit without loss of pay. The President may preschedule no more than one (1) hour each day to conduct business in the Hospital Union Office. Such schedule shall be with the approval of the supervisor involved. Any other labor-management business which requires attendance of the Union President must have prior approval of University Officials.

### d. Union Business

Employees elected to any Union office or selected by the Union to do work which takes them from their employment with the Employer may, at the written request of the Union and the concurrence of the Employer, be granted a leave of absence, without pay. The leave of absence shall not exceed twelve (12) months. Except in cases of emergency, union officials and shop stewards will be given unpaid administrative leave not to exceed one week to attend union conventions and union sponsored training programs, provided the Union gives Howard at least two (2) weeks advance notice of such leave.

### Section 4. Uniforms

Uniforms will be prescribed by the Employer when uniforms are necessary or desirable because of the nature of the

38

employee's duties, including his contacts with patients, or the public in an official capacity requiring his identification. The uniform will be the most economical type adequate for the purpose. Less than full uniform requirements may be applied in the following situations: temporary employees; employees temporarily assigned to positions for which uniforms are prescribed; employees appointed on an on-call basis, or when actually employed (day-to-day).

The Employer reserves the right to determine which employees will wear uniforms or protective clothing, and the right to prescribe the kind and color of uniforms or protective clothing. Employees required to wear uniforms or protective clothing which are not furnished will be given a prorated monetary allowance toward the cost of purchase and maintenance. The Employer will launder, clean, maintain and replace those uniforms it furnishes employees, except where the employer provides wash and wear smocks. In such cases, the employee is expected to maintain the cleanliness of those smocks. Those uniforms lost or damaged by the laundry will be replaced at no cost to the employee. The Employer will not be responsible for cleaning, laundering or maintaining those uniforms or protective clothing for which employees receive allowances. The Employer also reserves the right to establish instructions governing the issuance, replacement and return of uniforms or protective clothing.

Allowances will be paid twice a year at six month intervals to eligible employees on the payroll. These allowances shall be paid to full-time employees even though the employees are not on the rolls during a portion of the pay period. Such allowance shall be jointly determined by the Union and the Employer.

All other full-time and part-time employees working on regularly scheduled tours of duty shall be paid that proportion of the pro-rated allowance which their regularly scheduled tour of duty bears to eighty hours.

Allowance shall not be paid to employees in a non-pay status during an entire pay period (80 hours), to employees on terminal leave, or to employees while suspended or separated unless later reinstated. Such allowance shall not exceed three hundred and fifty dollars ($350.00) per year.

## Section 5. Agreement

The Employer and the Union agree to furnish each member-employee a copy of this Agreement at no cost to the

39

employee.  Costs shall be borne equally by the Employer and the Union for printing arrangements to be mutually agreed upon.

The Employer agrees to allow presentation of Union information to new employees at University conducted orientation sessions.

The Employer shall furnish, quarterly, to the Union a list of employees entering or leaving the bargaining unit.

## Section 6.  Training and Career Ladder Programs

a.   The Employer and the Union recognize the need for increased cooperation in the areas of the employee training and upward mobility.  Both parties subscribe to the principles of career ladders and promotion from within, consistent with other articles of this contract.  Therefore, both parties agree to establish a joint employee management committee, composed of three (3) unit employees and three (3) persons selected by the Employer which shall cooperate fully in the development of training and career ladder programs.

b.   The Union and the Hospital propose the establishment of a Task Force to be composed of three representatives from each to review a jointly sponsored union management upper mobility program that will provide for upper mobility within the bargaining unit.  The Task Force may call upon the expertise of the Hospital and the Union to achieve its task.

Joint sponsorship includes support by the Hospital and the Union.  The Task Force should prepare its initial report to the President of the Union and the Executive Director of the Hospital in six months.

c.   In order to provide on the job training, career advancement opportunities, and upward mobility, the parties agree that employees may participate in an upward mobility training program and, in doing so, voluntarily perform duties outside their job classification, without compensation.

In each instance the employee and the employer through the Office of Education and Training, will first jointly develop a training plan which establishes realistic skill enhancement goals for the employee and an individualized training plan to achieve the goals.  The Union will be given the opportunity to review and

40

approve the plan.

Employees successfully completing their respective upward mobility training programs will be given priority consideration to fill vacancies for which they qualify, as a result of the training, prior to Howard University Hospital attempting to fill position from the outside.

## Section 7.  Departmental Policy Manuals

The Employer agrees that there shall be no departmental policies or guidelines in conflict with the provisions of this contract and further agrees to meet and negotiate with the Union on implementation and impact of changes in personnel policies, practices and other matters affecting working conditions of bargaining unit members prior to the issuance of the policies and guidelines.

The Employer shall furnish the Union with copies of all departmental Policy Manuals.

## Section 8.  New and Changed Classifications

The Employer may establish salary grades for new or changed occupational classifications and present such rates of pay to the Union.  Failure to agree on the final rate shall not preclude the filing of a grievance.  Any higher rate determined through the grievance procedure or arbitration shall be retroactive to the date an employee worked in the new or changed classification.

The Employee may request a desk audit of his position from the Office of Personnel Administration if his current job description does not reflect the true nature of his work.

## Section 9.  Job Descriptions

The Employer shall supply an up-to-date copy of all position descriptions covering job categories in the bargaining unit to the Union within 90 days of the effective date of this contract.

## Section 10.  Work out of Classification

All assignments to work out of classification will be in writing either by a written memorandum, written agreement, or an official personnel recommendation.

Individuals required to work out of classification for less than ten days will have such hours accumulated and shall be paid

41

bi-monthly for those hours.

Individuals required to work out of classification for ten or more consecutive days shall have a personnel recommendation submitted for the payment of those hours by the tenth day of such work.

Payment for the higher classification shall be paid at the beginning step; or at a step that will yield a rate of at least $0.50 per hour above the employee's current salary. Payment will be distributed in the pay period following receipt of the approved recommendation.

## Section 11.  Sexual Harassment

The University and the Union recognize that sexual harassment is a form of misconduct which undermines the integrity of employment relationships and adversely affect employment opportunities.  All employees must be allowed to work in an environment free from unsolicited and unwelcome sexual overtures. Therefore, the parties mutually agree to identify and work to eliminate such occurrences.

Sexual harassment is defined as deliberate or repeated unsolicited verbal, comments, gestures, or physical contact of a sexual nature which are unwelcome.  Use of implicit or explicit coercive sexual behavior or control which influences or affects the career, salary, or job of an employee is sexual harassment.

## ARTICLE XXII

## UNION MANAGEMENT CONFERENCES

## Section 1.

The Employer and the Union agree to meet regularly, preferably bi-monthly, absent unforeseen circumstances, to discuss matters of mutual concern.  Such meetings shall be referred to as Labor-Management Conferences and shall not be used by either party to present or discuss grievances in any form or fashion.  Problems of mutual concern, including conditions tending to cause misunderstandings, shall be considered and recommendations may be made to either the Employer or the Union or to both, by the persons present at any conference.  Such meetings shall be exclusive of the grievance procedure provided for elsewhere in this Agreement and grievances shall not be

42

All former career and career conditional employees of the Hospital who as of July 1, 1967, became employees of Howard University shall retain benefit status and tenure attained by them as of the date immediately preceding and effective date of the transfer. (See Appendix A for copy of Transfer Agreement).

## ARTICLE XXV

### SAVINGS CLAUSE

In the event any Article, Section, or Portion of this Agreement should be held invalid and unenforceable by any Court of competent jurisdiction, such decision shall apply only to the specific Article, Section, or portion thereof specified in the Court's decision; and upon issuance of such a decision, the Employer and the Union agree to immediately negotiate a substitute for the invalidated Article, Section, or Portion thereof.

## ARTICLE XXVI

### MAINTENANCE OF BENEFITS

a.  The employer agrees that all benefits, working conditions, and procedures affecting employees prior to the date of this Agreement shall be continued during the term of this Agreement, except, where such benefits, working conditions and procedures are altered by this Agreement, or by mutual agreement of the parties.

b.  The employer agrees that eligible employees shall be covered by the Retirement Plan as set forth in the University President's memorandum and attachments dated June 19, 1987. The terms of said plan shall be incorporated by reference into this Agreement.

c.  A part-time employee who works at least twenty (20) hours per week is eligible for appropriately pro-rated health and life insurance, leave and tuition remission in accordance with established University policy. The insurance benefits will be available on the first day of the next benefit year (open season).

d.  Eligible part-time employees may contribute up to twenty (20%) of their salary into the University sponsored Supplemental Retirement Account in accordance

45

with established University policy.

Eligible employees covered by this Agreement shall be covered by the University sponsored Savings Plan in accordance with established University policy.

## ARTICLE XXVII

## HEALTH CARE

(a) Initial treatment for employees who become ill or injured on the job shall be provided through the Hospital Employee Health unit or the Emergency Room at no cost to the Employee.

(b) The University shall make reasonable provisions for the Health of its employees in accordance with the laws of the District of Columbia and the provisions of Federal occupational Safety and Health Act. These provisions cover pre-employment and annual physical at no expense to the employee, including chest x-ray and other exams when necessary. Each employee must assume responsibilities for adherence to the policy on annual physical.

## ARTICLE XXVIII

## HEALTH AND WELFARE FUND

The University agrees to provide life insurance coverage of 1-1/2 times the yearly salary of each employee.

## ARTICLE XXIX

## PERFORMANCE EVALUATION

### Section 1.

It is understood that employees and supervisors will work together in developing an employee's skills, abilities and attitudes that contribute to success on the job. The supervisor will assist staff in developing their skills and abilities through training and counseling sessions, and identifying areas where improvement is needed. The Supervisor will provide written guidelines for improving deficiencies. It is further understood that success will also depend upon the employee's performance and willingness to improve deficiencies.

### Section 2.

46

Each employee shall have an informal (verbal) performance evaluation at the halfway point in the probationary period and a written performance evaluation at the end of probation. Thereafter, each employee shall receive on his/her anniversary date, a written performance evaluation from the immediate supervisor. An employee shall receive a three (3) month notice of the due date of the evaluation.

All evaluations must be completed and reviewed with the employee within thirty (30) days after the due date in a scheduled evaluation conference. The employee shall have an opportunity to comment orally and in writing on the evaluation. Each employee shall acknowledge that the evaluation has been reviewed by signing and dating the document. Each employee shall receive a copy of the evaluation.

**Section 3.**

Employees cited for deficiencies and incompetence shall be given a forty-five (45) day period within which to correct any cited deficiencies. They shall receive counseling to communicate basic and positive means of correcting deficiencies and promoting professional growth. The supervisor shall discuss the employee's strengths and weaknesses with suggestions and advice for improvement. The supervisor will provide the proper training and supervision necessary to do the job correctly. Such improvement must be maintained during the next annual evaluation period.

**Section 4.**

If any employee is not satisfied with his/her evaluation he/she may discuss it with the next level supervisor up through the department head and division director. The reviewer shall have the authority to change the evaluation.

Such discussions regarding the performance evaluation are not considered as filing of a formal grievance as defined in Article XIV. If an employee does decide to grieve his/her annual performance evaluation, it must be done in accordance with Article XIV.

**Section 5.**

Performance Evaluations shall be removed from the employee's personnel folder every two years.

**Section 6.**

47

Management and the Union will work together to develop and improve performance evaluation forms. Evaluation forms shall be standardized to the extent possible. Employees receiving satisfactory or above average evaluations shall be awarded appropriate recognition.

## ARTICLE XXX

## TERMINATION

This Agreement shall be effective as of June 1, 1999 for purposes of any reopener on compensation negotiations and effective this 18the day of October 1999, for all other purposes, and shall remain in full force and effect until the 18the day of October 2001.

**IN WITNESS WHEREOF**, the parties hereto have set their hands on this _____ day of October 1999..

**FOR THE UNION**

_____
M. B. Tina Fox, President

_____
Derrick O. Davis, Chief Negotiator

_____
Executive Board, AFSCME Local 2094

_____
Executive Board, AFSCME Local 2094

_____
Executive Board, AFSCME Local 2094

_____
Executive Board, AFSCME Local 2094

_____
Executive Board, AFSCME Local 2094

_____
Executive Board, AFSCME Local 2094

**FOR HOWARD UNIV. HOSPITAL**

_____
H. Patrick Swygert, President

48

GOVERNMENT OF THE DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RIGHTS AND
LOCAL BUSINESS DEVELOPMENT

## PRE-COMPLAINT QUESTIONNAIRE

## EMPLOYMENT

*THE INFORMATION REQUESTED ON THIS FORM WILL ALLOW US TO ASSIST YOU. THERE IS NO GUARANTEE THAT THE INFORMATION SUBMITTED WILL CONSTITUTE A BASIS FOR FILING A COMPLAINT.*

**Please complete the following questionnaire completely to the best of your knowledge. Be specific as possible in describing your allegations.**

RECEIVED OCT 12 0 1999

**APPOINTMENT WITH:**     **Haydn Demas, Intake Specialist**
441 4TH STREET, N. W., ROOM 970N
WASHINGTON, D. C.  20001
**(202) 727-3900**

**DATE:**

**TIME:**

**EMPLOYMENT**
**PAGE 1**

Date completed _9-25-99_

Name _Potts_   _Rossi_   _McGuil_
      Last      First      Middle

Address _14124 Bishop Claggett CT._
        Street                    Apt/Unit No.

_Upper Marlboro  MD. 20772  P.G._
City            State   Zip Code  Ward (DC) or County (MD or VA)

Telephone _(202) 865-6791_ (Work) _(301) 982_ (Home)
                                      _574-2541_

_(202) 865-4449_ (Fax)

Please contact me at _✓_ work _____ home.

Person to contact if you cannot be reached:

Name _Annette Potts_        Telephone _(301) 982-9821_

Address _4946 Lakeland Rd. College PK, MD. 20740_

I WISH TO COMPLAIN AGAINST:
NAME OF EMPLOYER/CORPORATE ENTITY:

Address _Howard University Hospital 2041 Georgia Avenue N.W._

_Washington, D.C. 20060_
City            State              Zip Code

Name and title of President/Principal Officer/Owner/Human Resources Manager

_unknown_                  Telephone number _____

Number of employees in the District of Columbia _____

The following information must be provided for record keeping purposes by all Complainants:

Social security number _214/90/4955_  Date of birth _3/4/65_ Sex _✓_ (M) F

Race/ethnic origin _Black_

**EMPLOYMENT**
**PAGE 2**

**Please mark the basis/protected class below which is the subject of your complaint:**

____Race ✓Sex ____Age ____Color ____National Origin
____Religion ____Disability ____Marital Status ____Matriculation
____Personal appearance ____Sexual orientation ____Family responsibilities
____Political affiliation ____Retaliation

**How do you feel that that you were treated differently:**

____Terminated ____Denied employment ✓Denied promotion
____Sexual harassment ____Other forms of harassment

**Are you presently employed?** ✓ Yes ____ No. If yes, date hired 6-9-94

Annual **Salary** 24,766 Appr. 12 h **Title at time of hire** Echocardiography Technologist

**If no, date terminated or denied employment** _____

**Date(s) of alleged violations (i.e. suspensions, denial of promotion, AWOL, LWOP)** 6-9-94
1998 From periods of Sept. until Dec.

**Job title and salary at the time of the alleged violation:** Echocardiography Technologist

**If denied employment or a promotion please list the position(s) for which you applied**
Echocardiography Technologist

**What is the name of your immediate supervisor?** During the time of this event
Carolyn S.B. Johnson, Supervisor, Cardiology

**Describe in detail the job action that you believe was discriminatory (i.e., task assignments, performance evaluations, training opportunities, employment benefits), listing the dates and the officials/management involved.**

1) The hiring of personnel with filling out filling Job vacancy, when I was on military training. 9/98 - 12/98

2) Failure to recognize me as the senior Echo. Tech. as I am and paying the new employee more money than me, Rosie M. Potts, when have more experience, time in employment and time as an Echocardiography Technologist.

3) Refusal to allow me the equal opportunity that I deserve.

4) In the Past false promises was made which have led to Contractual suit by law firm. This division of the hospital lacks fidelity and that is my reasons for solving this matte out side of there institution. This is the second illegal encounter with Howard University Hospital.

**EMPLOYMENT**
**PAGE 3**

If you are claiming disability discrimination, please describe in detail the nature of your disability and if it applies, whether an accommodation was requested of your employer. List the date and the individual you notified of your disability.

N/A

Has the Respondent/employer treated you more harshly with respect to your employment than other persons who perform the same or similar work? If yes, please list the names, title and protected group of these persons.

Yes, The Management of medicine, Mr. Rowe, Richard

**REFERRAL DATA:**

If you have an attorney please provide the following information:
Name:_____ Telephone/Fax:_____
Address:_____ None _____

Please indicate how you were referred to this agency i.e., friend/co-worker, EEOC, HUD, telephone book, brochures published by the agency. By free consultation of a law firm.

======================================================================

• **D.C. Government Employees Only**

Have you filed an informal complaint with an EEO Counselor? Yes _____ No ✓

Counselor's Name Union representation was rendered.
Agency_____
Date of exit letter_____
Counselor's telephone number_____

Employment 7/99

Spencer, Jane E. (Ms.)
SS#: ▮▮▮▮▮▮▮
Howard University Hospital

Ms. Spencer served admirably as a Echocardiography Technologist for more than 30 years. Her death was effective December 22, 1998 after a brief illness.  Her dedicated services to the University community will be missed by all.

Ms. Spencer was on sick leave October 26, 1998 – December 9, 1998 (3 hrs.) and annual leave December 9, 1998 (after 3 hrs.) until the effective date of death December 22, 1998.

To be paid death gratuity.

**NAME & TITLE (Mr., Mrs., Dr., etc.)**

Williams (Last)    Colleen (First)    (M.I.)

**SOCIAL SECURITY NO.**

**DATE OF BIRTH**
12/06/67

**ADDRESS (Street, City, State & Zip Code)**

**HOME TELEPHONE NO.**
301-459-0333

**LOCATION OF POSITION**
Cardiovascular Diseases

**POSITION NO. (If applicable)**
4212-16

**GRANT TITLE (if applicable)**
N/A

**DIVISION TITLE**
Howard University Hospital

**DEPARTMENT TITLE**
Medicine

**POSITION TITLE AND BRIEF DESCRIPTION**
Echocardiogram Technologist

**FULL TIME**
(or percent of full time 100 %)

**HOURLY WAGE RATE**
$17.00

**ANNUAL SALARY RATE**
$353LO
$25,385 ~~per yr~~

**GRADE (if applicable)**

**BUDGET ACCOUNT NO.**
4212-14 16 ×6

**TOTAL FUNDS TO BE OBLIGATED**
$20,400  17,60

**BEGINNING DATE OF APPOINTMENT**
July 1, 1998

**TERMINATION DATE OF APPOINTMENT**
December 31, 1998

Does the applicant have relatives presently working at the University or Hospital?
YES ☐  NO ☐   If yes, state name, position and relationship _____

Has the applicant ever been convicted of a crime, excluding misdemeanors and summary offenses?

YES ☐  NO ☒   If yes describe _____

**EDUCATION: (Places, dates, and degrees earned)**
AS - Medical Radiography UDC 1996
Allied Health Honor Society 1995.

**EXPERIENCE:**
1/97-11/97 Dr. J.R. Robinson-Echo Intern
11/97 - present Hypertension Clinic
1/98 - present Dr. Alfred Burris
            (Echocardiographer)
4/98 - present Greater Southeast Community
            Hospital - PRN Tech

performing 2-D Mode Color Flow Doppler;
EKG's, Holter monitors, stress echo's, stre
tests, T.E.E.'s

**JUSTIFICATION:**
To provide continuity of services while the senior
tech is out on extended sick leave.

**RECOMMENDED BY (Department Head)**
Ad Hosten MD
Adrian O.Hosten, M.D., Chairman, Department of Medicine

**DATE**
7-15-98

**TELEPHONE NO.**

**AUTHORIZED BY (Dean, Director, Administrative Officer)**

**DATE**

---

**HOSPITAL USE ONLY**

**APPROVED BY BUDGET OFFICE**
Jdalyn M Eason
Jidalyn Eason

**DATE**
8/4/98

**APPROVED BY DIVISION EXECUTIVE**
Thomas Gaiter, M.D., Medical Director

**DATE**
7/22/98

**APPROVED BY HOSPITAL DIRECTOR**
Sherman P. McCoy

**DATE**
9/11/98

**CERTIFIED BY DEPARTMENT OF PERSONNEL SERVICES**
Paulette Campbell

**DATE**
July 27, 98

DISTRIBUTION: White - Payroll, Blue - Authorizing Department, Green - Employee, Yellow - Personnel, Pink - Budget, (Hospital only), Gold, retained

# ADDITIONAL INTERROGATORIES

Docket No.: 00-043

The pronoun "you" refers to the party to whom these Interrogatories are directed and the persons mentioned in the preceding paragraph.

The term **"Respondent"** means, Howard University Hospital, its employees, agents and representatives.

1. Please supply all personnel action forms for Colleen Williams, including those for when she was initially hired as a temporary employee.

   *Could not find evidence on the DCOHR/dis. EEOC records! No Application*

2. Was Ms. Williams a member of Local 2094?

3. ~~Please state the outcome of Complainant's grievance (i.e. promotion issue) dated February 2, 1999. Supply all supporting documentation, including any settlement agreement Complainant may have signed.~~

4. ~~Explain, if applicable, why Complainant was not given a promotion after his February 1999 grievance.~~

5. ~~State whether there was a promotion vacancy available when Complainant returned from military training and when he filed a grievance in February 1999.~~

6. Submit all EEO correspondence (i.e. memos, letters, grievances, settlements) between Complainant and Respondent that took place during the years 1997 through 1999.

I, _____, having read the above, state that the responses contained herein are true and correct to the best of my knowledge and belief.

_____
Signature

Title _____

SUBSCRIBED AND SWORN to before me this _____ day of _____, of 2002.

_____
Notary Signature

My Commission Expires: _____

GOVERNMENT OF THE DISTGRICT OF COLUMBIA
OFFICE OF HUMAN RIGHTS

|                      |   |
|----------------------|---|
| ROSSI M. POTTS,      | ) |
|                      | ) |
|        Complainant,  | ) |
|                      | ) Docket No. 00-043-P (CN) |
|        v.            | ) |
|                      | ) |
| HOWARD UNIVERSITY    | ) |
|                      | ) |
|        Respondent.   | ) |

## HOWARD UNIVERSITY'S RESPONSES TO ADDITIONAL INTEROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

I, Leroy T. Jenkins, Jr., Esquire am Senior Associate General Counsel for Howard University ("Howard"). I hereby present the following responses to specific allegations filed by **Mr. Rossi M. Potts** ("Complainant").

## RESPONSES TO INTERROGATORIES:

1. The personnel action forms for Ms. Colleen Williams are enclosed **(See Attachment #1)**.

2. Ms. Williams was a member of Local 2094.

3. (~~Mr. Potts received a retroactive salary increase in November 1000 in response to his grievance~~ *False* ~~that was filed in February 1999~~) and pursuant to an offer made to him in June 1997 **(See Attachment #2)**.

4. Mr. Potts was not given a promotion after his 1999 grievance because there were no promotional opportunities available at that time. Additionally, (~~Mr. Potts received a monetary settlement for his grievance.~~) *False*

5. In February 1999 there were no promotion vacancies at Howard University Hospital. (In *False Application given to Colleen Williams* November 1999,) there was a vacancy for an Echocardiographic Technologist. (~~This position was needed to replace Ms. Jean Spencer who was out on extended sick leave and who subsequently died in December 1999.~~ *False*) This position was the same as the one held by Mr. Potts. **(See Attachment #3)**

6. The Office of Human Resources has no EEO correspondence between the Complainant and Respondent.

## CONCLUSION:

I, Leroy T. Jenkins, Jr., Esquire, Senior Associate General Counsel, having read the above, state that the

responses contained here are true and correct to the best

of my knowledge and belief.

Leroy T. Jenkins, Jr.

SUBSCRIBED AND SWORN to before me this 5th day of

June, 2002.

Notary Public

Betty Lancaster Short
Notary Public, District of Columbia
My Commission Expires 03-31-05

My Commission Expires: _____

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

**I (a) PLAINTIFFS**

Rossi M. Potts

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  P.G.
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

14124 Bishop Claggett Ct. Upper Marlboro
Md. 20772

**DEFENDANTS**

Howard University/Howard University Hospital

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  D.C.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Case: 1:08-cv-00706
Assigned To : Urbina, Ricardo M.
Assign. Date : 4/24/2008
Description: Civil Rights-Non-Employ

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☑ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZEN**
(PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☒ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty:**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

②

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☑ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☑ 440 Other Civil Rights<br>☑ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Title VII, EPA of 1963, Title 38, DCHA, DCHR, Title 18, False Statement Accountability Act of 1996, etc.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS  ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** 30,000,000.   Check YES only if demanded in complaint  **JURY DEMAND** ☑ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☑ YES  ☐ NO  If yes, please complete related case form.

**DATE** April 24, 2008  **SIGNATURE OF ATTORNEY OF RECORD** _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.